CONSOLIDATION COAL CO. *v.* PORTER

[No. 107, October Term, 1948.]

*Decided March 10, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Theodore C. Waters,* with whom were *William A. Gunter* and *Mullikin, Stockbridge & Waters* on the brief, for the appellant.

*Edward J. Ryan* and *Morgan C. Harris,* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Consolidation Coal Company, employer, appellant, from an order of the Circuit Court for Allegany County, affirming an order of the State Industrial Accident Commission (the Commission), awarding compensation to William Porter, employee, appellee, at the rate of $23.00 per week during the continuance of permanent total disability resulting from silicosis, not to exceed $5,050.

The appellee was employed by the Consolidation Coal Company beginning in 1924 and continuing until March 1, 1944. In March, 1944, the appellant sold out to the Consolidated Fuel Company. The appellee continued his work as usual. From March 1, 1944, to April 15, 1944, he worked for the Consolidated Fuel Company. He ceased work on April 15, 1944, because of pains in his chest, cough, sputum, weakness, loss of appetite and slight loss of weight. At that time he consulted a doctor at Frostburg, Maryland, who according to the appellee, made a diagnosis of "bronchial condition". No X-ray was made of his chest at that time. During the period he was employed by the appellant he dug coal for about six months. He then ran a motor, hauling coal out of the mine. In driving this motor it was necessary to put sand on the tracks to make the motor hold and pull on steep grades.

He did not work again until the middle of June, 1944, when he started driving a truck for a bread company. He stopped this work in about two months because he was not making enough money. In November of that year he went to work with an insurance company and worked there until November, 1945, when he quit because of his physical condition and has not worked since. He

consulted another doctor at Frostburg in January, 1947, and, according to the appellee, he was told he could be cured by penicillin. The same month he went to see Dr. Rozum of Cumberland who sent him to Dr. Rathbone on January 10, 1947, for an X-ray examination and he diagnosed appellee's case as sand dust in the lungs or silicosis. Dr. Rathbone sent him to Dr. Van Ormer on January 22, 1947, who examined the X-ray picture made by Dr. Rathbone and who, having learned that the appellee had been exposed to sand dust, confirmed Dr. Rathbone's diagnosis as silicosis, an occupational disease.

On January 20, 1947, appellee filed his claim for compensation against the Consolidated Fuel Company for permanent total disability by reason of silicosis. It having been determined that he worked for the Consolidated Fuel Company only about thirty-four days, he was advised by the director of claims of the Commission to amend his claim to include Consolidation Coal Company. He then filed on February 12, 1947, a claim against the appellant for permanent total disability by reason of silicosis. It appears that in November, 1945, the Consolidation Coal Company became merged with another company and became known as the Pittsburgh Consolidation Coal Company.

Hearings were held before the Medical Board for Occupational Diseases (the Board) in Cumberland on February 18, 1947, and on July 15, 1947. The Board, when testimony was taken and medical reports filed, found no liability on the part of the Consolidated Fuel Company because appellee was employed by it for only thirty-four days; that appellee stopped work for the Consolidation Coal Company February 29, 1944; that the first distinct manifestation of his disease (silicosis) was approximately April 15, 1944, the date he stopped work with the Consolidated Fuel Company; that permanent total disability began in November, 1945; and that the claim against the Consolidation Coal Company was filed February 12, 1947.

On September 8, 1947, the attorney for appellant requested that the matter be set down before the Commission for review and argument on legal questions. A hearing was set before Commission on October 10, 1947. The Commission reviewed the testimony before the Board and after argument by counsel dismissed the claim against the Consolidated Fuel Company and found appellee was permanently totally disabled; that appellee gave notice to the employer within ten days, the time required by law; that the first date appellee was aware and had knowledge of the distinct manifestation of silicosis was the latter part of January, 1947. The Commission also found that the first knowledge appellee had that he was suffering from silicosis was the latter part of January, 1947, as he had been so advised by his doctor and therefore appellee did file with the Commission within one year from the date of disability his claim for disability from an occupational disease against Consolidation Coal Company. The Commission also dismissed the claim against the Pittsburgh Consolidation Coal Company and ordered that the Consolidation Coal Company pay appellee $23.00 per week during the continuance of permanent total disability resulting from silicosis, not to exceed $5,050. From that order of the Commission the Consolidation Coal Company appealed to the Circuit Court for Allegany County.

In the Circuit Court appellant pleaded limitations, claiming that written notice of appellee for compensable occupational disease was not given by appellee to Consolidation Coal Company within ten days after the first distinct manifestation of the disease, and that the claim was not filed by the appellee before the Commission within one year from the beginning of disability for which claim was made. The trial judge, after hearing, affirmed the order of the Commission. From that order appellant appeals here.

Appellant contends that the findings of fact by the Board are final and binding upon the Commission and upon the Circuit Court for Allegany County upon appeal

because there had been no request for a review of the record; further, that the limitations in Article 101, Section 26 and 38 of the Code (1947 Supplement), bar the allowance of the claim against appellant.

In appeals from the Medical Board to the Commission in occupational disease cases the Commission renders its decision or award upon all issues referred to the Medical Board. It is not bound by any finding of the Board either as to medical or legal questions, or as to the facts of the case. In appeals in occupational disease cases from the Commission to the courts, the findings of fact by the Commission are final and not subject to review by the courts. Article 101, Section 29 (1947 Supplement Code). *Bethlehem-Sparrows Point Shipyard v. Bishop,* 189 Md. 147, 154, 156, 55 A. 2d 507, 510, 511. In the instant case the attorney for the Consolidation Coal Company in his letter of September 5, 1947, asked that the case be set down before the Commission "for review and argument on legal questions". It therefore appears that there was an appeal from the finding of the Board to the Commission, at least on the legal question, which is the only question in the case.

Article 101, Section 26, *supra,* enacted as Chapter 465 of the Acts of 1939, provides in part: "Written notice shall be given to the employer of an occupational disease by the employee or some one in his behalf within ten (10) days after the *first distinct manifestation thereof, * * *.* If no claim for disability or death from an occupational disease be filed with the State Industrial Accident Commission within one (1) year from the date of disablement or death, as the case may be, the right to compensation for such disease shall be forever barred; * * *." (Italics supplied here.)

Article 101, Section 38, provides in part: "That failure of an employee to file a claim for compensation within one year after the beginning of his disability shall constitute a complete bar to any claim under this Article, unless it shall be established that failure to file such claim was induced or occasioned by fraud, or by facts

and circumstances amounting to an estoppel, in which case the claim shall be filed within one year from the time of the discovery of the fraud, or within one year from the time when the facts and circumstances amounting to an estoppel cease to operate, and not afterwards." This section was in effect before the enactment of the occupational disease statute and is not applicable to this case because Section 26, *supra,* governs in occupational disease cases.

Article 101, Section 67(15), provides: " 'Disablement', as used in Sections 21, 22, 27, 28 and 29 of this Article (applicable here), means the event of an employee's becoming actually incapacitated, either partially or totally, because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease; and 'disability' means the state of being so incapacitated. Disablement and disability shall be determined by the Medical Board as herein provided."

Article 101, Section 24, provides in part: "Compensation shall not be payable for partial disability due to silicosis * * *". It has been said that partial disability from silicosis is nonexistent and also that the medical diagnosis of lung disease is very difficult. *Maryland Law Review, Occupational Diseases,* Volume IV, No. 2, pages 150 and 152.

There is no doubt in this case that the first knowledge any one had that appellee was suffering from silicosis, or that there was any causal connection between claimant's employment and his disability, was in the latter part of January, 1947. There is also no doubt that claimant was reasonably diligent in determining the cause of his disability. There is also no doubt that appellee filed his claim within ten days after the time he was aware of and had knowledge of the first distinct manifestation of silicosis. There is also no doubt that there was a "manifestation" of some disability in April, 1944, but no one at that time knew of any causal connection between claimant's occupation and that disability. The legal question before us is therefore whether the words

of the statute, Article 101, Section 26, *supra,* mean that limitations start to run in occupational disease cases after the first distinct manifestation of the occupational disease to the employee or to some one in his behalf.

Apparently, this is a case of first impression in this Court. Appellant refers us to many cases dealing with the question of limitations as applied to injuries. *Dunstan v. Bethlehem Steel Company,* 187 Md. 571, 51 A. 2d 288; *West Virginia Pulp & Paper Co. v. Morton,* 185 Md. 623, 45 A. 2d 725; *Bethlehem-Sparrows Point Shipyard v. Glass,* 188 Md. 501, 53 A. 2d 405. However, as those cases involve injuries and not occupational diseases they are not helpful here. The case of *Griffin v. Rustless Iron & Steel Co.,* 187 Md. 524, 51 A. 2d 280, involved an injury by reason of an explosion in August, 1939, at which time claimant was sprayed with a hot lead solution. He did not learn until May, 1945, that there was a causal connection between the accident and the total loss of sight of his eye. In that case many out of state cases were reviewed and it was said, 180 Md. at page 540, 51 A. 2d at page 288: "We think, however, that the wording of the Maryland statute indicates that the period of limitation begins to run from the time when disability becomes, or should become, reasonably apparent. And we hold that this does not mean the particular class of disability for which compensation is asked, but any disability (except that of a trivial nature) which arises from an accident and which eventually ripens into the class of disability for which compensation is claimed. * * * It (the Maryland statute) does define 'disability' because of an occupational disease as the state of being actually incapacitated. Art. 101, Sec. 80(15). This provides a special standard for this kind of disability which would not have been placed in the statute had the same standard been the one applicable to other types of cases." See also *Baltimore Steel Company v. Burch,* 187 Md. 209, 49 A. 2d 542.

This being a case of first impression in Maryland we will look to see how other states have construed a statute

providing that limitations start after "the first distinct manifestation" of the occupational disease or after disablement or death. In many states, of course, the limitation statute is different. In some the statute specifically provides that limitation starts within a certain time after the employee knew or ought to have known the nature of his disability. Of course, as this is a distinct statutory provision, decisions from those states are not helpful. Other states provide that notice shall be given within a particular time after the date when the employee shall have ceased to be subject to exposure to the occupational disease. Decisions from those states are not helpful here.

The case of Bremner v. Marc Eidlitz & Son, Inc., 1934, 118 Conn. 666, 174 A. 172, 174, seems to be remarkably in point. The Connecticut statute, there for interpretation, provided "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation shall be given within one year from the date of the accident or from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury." Gen. St. 1930, § 5245. In that case, Bremner had worked many years as a stone cutter. On January 3, 1931, he consulted a doctor because of a cold and coughing, and X-rays of his lungs were taken. The doctor found indications of pneumonoconiosis, probably associated with a tubercular process. He prescribed certain medicines, directed that the claimant's temperature be taken, and that some sputum be brought in for examination. On January 17, 1931, the cough practically disappeared and the doctor stated that he did not believe that he had active tuberculosis, and discharged him. On March 19, 1932, Bremner returned to the doctor complaining of a cold and coughing. There appeared to be no change in his chest condition other than signs of chronic bronchitis. On April 29, 1932, Bremner was forced to stop work because of illness and he was never able to resume work. No written notice of a claim for compen-

sation was filed until March 15, 1933. The Commissioner found that the first manifestation of a symptom of silicosis was in January, 1931, when Bremner had the cough, was short of breath, and raising sputum. Bremner claimed that he did not know he was suffering from silicosis or any disease due to his occupation until within a year prior to March 15, 1933. The Commissioner dismissed the claim because no written notice had been given within one year from the date of the first manifestation of a symptom of an occupational disease. The Court, in finding that the claim was compensable, said in language which is so pertinent here that we quote at length therefrom:

"The verb 'to manifest' means to show plainly or to make to appear distinctly. Webster's New International Dictionary. The Oxford Dictionary lists the adjective 'manifest' among its synonyms as follows: Clear, plain, evident, manifest, obvious, patent, palpable, unmistakable, conspicuous, and says: 'What is clear can be seen without dimness; what is plain can be seen by anyone at the first glance without search or study; evident suggests something more of a mental process but no difficulty in seeing that the thing is true; manifest is a degree stronger than evident, the mind getting the truth as by an intuition.' No doubt the legislators used the word manifestation with something of this significance, intending that the duty of giving notice, and the risk that an employee might forfeit compensation for an occupational disease, should arise only when a symptom of that disease should plainly appear, not when it was merely suspected or doubtful. * * * But to whom must the symptom so manifest itself? Ordinarily the law does not give a right or impose a liability based upon knowledge, unless it be the knowledge of the particular person whose right or liability is in question. Here the notice which must be given if compensation is to be awarded an employee clearly must be one given by him or by some one in his behalf; and the risk of loss, if it be not given, is personal to him. This very

forcibly suggests that the manifestation of a symptom of an occupational disease which sets running the time within which notice is to be given must mean its manifestation to the employee claiming compensation. Indeed that this must be so requires little consideration of the possibilities inherent in a construction of the statute which would make his right depend upon the manifestation of a symptom of the disease to others."

The Court further pointed out that most symptoms of diseases are recognizable within the field of expert medical knowledge and the Legislature could hardly have intended to make the right of the claimant to compensation depend upon the knowledge of others, and further "that the manifestation should be to the employee or some one standing in such a relation to him that the knowledge of such a person would be imputed to him, and be such as is or ought to be recognized by him as symptomatic of an occupational disease." See also *Rossi v. Thomas F. Jackson Company*, 1935, 120 Conn. 456, 181 A. 539.

The case of *Blassingame v. Southern Asbestos Company*, 1940, 217 N. C. 223, 7 S. E. 2d 478, involved a claim for injury resulting in death caused by pulmonary asbestosis resulting in lobar pneumonia. The North Carolina statute, for interpretation, provided that written notice should be given within thirty days after the first distinct manifestation of the occupational disease. In affirming the decision of the Commission, the Court said, 7 S. E. 2d at page 483: "The Commission has held in several cases against the Standard Mineral Company that the 'first distinct manifestation' is when the employee is told by competent medical doctors that he had asbestosis or silicosis. No claim for compensation could be filed until there was a diagnosis of asbestosis."

In *Roschak v. Vulcan Iron Works*, 1945, 157 Pa. Super. 227, 42 A. 2d 280, the occupational disease statute, there for interpretation, provided that the employee or some one in his behalf should give notice to the employer within fourteen days "after the disability begins". 77 P. S. § 1411. The question was whether the notice of disability

was given within the proper time. The Pennsylvania Court relied strongly on the Connecticut case of *Bremner v. Marc Eidlitz & Son, Inc.*, Connecticut, *supra,* and *Blassingame v. Southern Asbestos Co.*, North Carolina, *supra.* It was there pointed out that the rule is universally accepted that statutes like the one there under consideration are to be liberally construed in favor of the employee. The Court found that it could not be the intention of the Legislature to require the impossible and it was manifestly impossible for the employee to tell the employer about the disability which the employee himself did not know. An occupational disease is generally a gradual, insidious and progressive injury which eventually produces a disability. The Court, in reversing the decision of the Board denying compensation, said, 42 A. 2d at pages 284 and 285: "The cases relied on by the lower court in its opinion and order reversing the action of the board are proper authority requiring strict compliance with the provision of the Workmen's Compensation Act as to notice in respect of accident or injury. But the weight of authority is clearly on the side of a more liberal interpretation of the corresponding provisions of the Occupational Disease Act as to the date when the statute begins to run in the case of disability resulting from an occupational disease. Were we to rule otherwise, we would be obliged to hold that it was the legislative intent 'to require the impossible.' "

In *Smith v. Federated Metals Corporation,* 1939, 235 Mo. App. 297, 133 S. W. 2d 1112, the claim was for permanent total disability resulting from an occupational disease, lead poisoning. The Missouri statute, Mo. R. S. A. § 3727, required the claim to be filed within a certain time from the date of injury or death. The Court held that limitations started to run from the time that it was reasonably discoverable and apparent to the employee that he had a compensable injury, namely, lead poisoning, attributable to the natural incidents of his employment.

In *Pullman Company v. Industrial Accident Commission*, Cal. App., 1946, 164 P. 2d 955, 961, the claim was for an occupational disease, bursitis. Limitations in filing the claim began under the statute at "the date of injury". Labor Code, § 5405. The Court said, 164 P. 2d at page 961: "* * * the 'date of injury' * * * is the date that the 'accumulated effects culminate in a disability traceable to the latent disease as the primary cause, and by the exercise of reasonable care and diligence it is discoverable and apparent that a compensable injury was sustained in performance of the duties of the employment.'"

See Schneider on *"Workmen's Compensation"*, 3rd Permanent Edition, Section 935. Also *Marsh v. Industrial Accident Comm.*, 217 Cal. 338, 18 P. 2d 933, 86 A. L. R. pages 563, 572, 573, 574.

Maryland has always construed the compensation statute liberally. The reasoning in the cases hereinbefore cited is persuasive. The employee in the case now before us did not suspect or believe that he was suffering from silicosis, the occupational disease, until January, 1947. Although he had diligently consulted doctors, none of the doctors knew or apparently suspected until that date that he had silicosis. It was therefore impossible for him to file the claim until he knew or had reason to believe the cause of his disability or that he suffered an occupational disease. We agree that the words of the statute now in question mean in the case now before us that limitations as to notice to the employer, and as to the time of filing of the claim, Article 101, Section 26, *supra,* started to run in this occupational disease case from the time the employee or some one in his behalf knew or had reason to believe that he was suffering from an occupational disease and that there was a causal connection between his disability and occupation, which was January, 1947. Of course, the employee had been reasonably diligent in determining the cause of his disability. This must have been the intent of the Legislature for, as hereinbefore pointed out, to

hold otherwise would be to hold that the Legislature intended "to require the impossible". The order will therefore be affirmed.

*Order affirmed, with costs.*