# HERMAN W. SHIFFLETT *v.* POWHATTAN MINING COMPANY ET AL.

[No. 44, September Term, 1981.]

*Decided March 26, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*C. Victor McFarland* for appellant.

*Richard Teitel, Assistant Attorney General,* with whom were *Charles R. Goldsborough, Jr., Assistant Attorney General,* and *Stephen H. Sachs, Attorney General,* on the brief, for appellees.

RODOWSKY, J., delivered the opinion of the Court.

Amendments to Maryland's workmen's compensation law, Md. Code (1957, 1979 Repl. Vol., 1981 Cum. Supp.), Art. 101 (the Act) have from time to time increased the maximum award for permanent total disability. To be determined in this appeal is the monetary limit applicable in an occupational disease case involving asbestosis. From the time of the claimant's last injurious exposure to asbestos dust, through the date of the compensation award, the facts in this case span two decades, during which the statutory ceiling was twice raised. We shall hold that the award maximum is determined by the statute in effect at the time the claimant became compensably disabled due to the disease.

Appellant and claimant, Herman W. Shifflett (Shifflett), worked at the Powhattan Mining Company (Powhattan), where he was exposed to asbestos dust, from sometime in 1950 until early 1959. There has been no injurious exposure since that time. After leaving Powhattan, Shifflett worked at a number of occupations, principally as a security guard. He stopped work on his last job, which was as a guard at the Social Security complex, because he was "producing large amounts of sputum." This was in mid-June of 1976. In early 1975 Shifflett's son-in-law, who had been a foreman at Powhattan and who subsequently died of asbestosis, had suggested to Shifflett that the claimant might also be suffering from the disease. Shifflett consulted a physician and, after various tests, was advised by a report, transmitted with a cover letter dated October 17, 1975, of the diagnosis of "pulmonary asbestosis, secondary bronchiectasis and reduction in lung function."

Shifflett made claim under the Act on November 4, 1975 against Powhattan. After a hearing on January 10, 1978 the medical board rendered its findings. These included a determination that Shifflett's disability was due 100% to the occupational disease which was first distinctly manifested in early 1974. The employer and the State Accident Fund, as insurer, petitioned the Workmen's Compensation Commission (the Commission) for review and the medical board decision was affirmed. By an award dated May 3, 1979 the Commission ordered that there be paid to Shifflett "compensation for permanent total disability at the rate of $40.00 per week, beginning January 15, *1959* not to exceed the sum of $20,000.00 . . . ." (Emphasis added.) On cross-appeals to the Baltimore City Court, the Commission was affirmed. Shifflett appealed to the Court of Special Appeals and challenged the $20,000 limitation. We granted Shifflett's petition for certiorari prior to consideration of the case by the intermediate appellate court.

Under the statute in effect on the date of Shifflett's last injurious exposure, compensation for permanent total disability was not to exceed $20,000. Md. Code (1957), Art. 101, § 36 (1) (a). The ceiling was increased to $30,000 in 1960 (Ch. 30) and to $45,000 effective July 1, 1969 (Ch. 112).[1] Shifflett contends that the $45,000 figure applies to his case and that the Commission made an error of law in limiting its award to $20,000. The employer and insurer take the position that the ceiling in effect as of the date of last exposure controls.

The general rule is that benefit increases are not retroactive and that the benefit level in effect at the time of injury controls. 2 A. Larson, *Workmen's Compensation Law* § 60.50 (1981 rev. ed.). However, asbestosis cases are unlike claims arising out of industrial accidents, in which some disability ordinarily is manifest at the time of the accidental

---

1. The "ceiling" is subject to the further provision, under § 36 (1) (a) of the Act, "that if the employee's total disability shall continue after a total of $45,000.00 has been paid, then further weekly payments at the rate previously paid shall be paid to him during such [permanent total] disability." This proviso is not involved in the present appeal.

injury or relatively soon thereafter. "[A]sbestosis, like other pulmonary dust diseases, is insidious in its onset" and "can be well advanced before a claimant is aware that it has taken up dread habitation in his chest." *Babcock & Wilcox, Inc. v. Steiner,* 258 Md. 468, 474, 265 A.2d 871, 875 (1970). In this case a period of over 15 years elapsed between the last exposure and Shifflett's learning that he suffered from asbestosis. Even then, Shifflett continued to work as a security guard for eight more months.

The General Assembly has chosen the time when disability results from an occupational disease as the point at which the disease becomes compensable. This is clear from the provisions of the Act dealing with occupational diseases generally and from those provisions dealing particularly with pulmonary dust diseases.

The Act defines an occupational disease to be "the event of an employee's becoming actually incapacitated, either temporarily, partially or totally, because of a disease contracted as the result of and in the course of employment, as provided in § 22 of this article." § 67(13).[2] Section 67(15) defines " '[d]isablement,' as used in §§ 22, 27, 28 and 29," (all of which deal with occupational diseases) to mean "the event of an employee's becoming actually incapacitated, either partly or totally, because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease" and defines "disability" to mean "the state of being so incapacitated."

An employee who "suffers from an occupational disease, and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease," and who meets the other statutory requirements, is "entitled to compensation . . . ." § 22 (a). If the employee dies as a result of such disease, his dependents are entitled to compensation. § 22 (a). Compensation for death from an occupational disease is not payable "to any person whose relationship to the deceased . . . arose subse-

---

2. All references are to Md. Code (1957, 1979 Repl. Vol.), unless otherwise indicated.

quent to the beginning of the first compensable disability save only to after-born children of a marriage existing at the beginning of such disability." § 23 (a). But it is the employer in whose employment the employee was last injuriously exposed to the hazards of the occupational disease, and the insurance carrier on the risk at that time, who are liable for the compensation. § 23 (b). Notice is to be given to that employer, § 23 (b), and that employer is required to file a report with the Commission "[w]henever a disability from an occupational disease occurs . . . ." § 26 (b). Limitations of three years in pulmonary dust disease cases, and of two years in other occupational disease cases, are measured "from the date of disablement or death, or the date when the employee or his dependents first [have] actual knowledge such disablement was caused by the employment . . . ." § 26 (a).

If a compensation claim for occupational disease involves "controverted medical issues," it is referred to the medical board for investigation and hearing; that board is to fix the "date of disablement, if in dispute," as a medical question. If that date "cannot be exactly fixed scientifically," the board is to "fix the most probable date . . . ." § 28.

The Act's occupational disease provisions as a whole reflect that the General Assembly considers disablement from occupational disease as an event which is then statutorily treated much like an injury caused by an accident. This approach is expressly found in § 22 (a), which deals generally with compensation in occupational disease cases. In relevant part it reads as follows:

> Where an employee . . . suffers from an occupational disease, and is thereby disabled . . . or dies as a result of such disease . . . the employee, or, in case of his death, his dependents shall be entitled to compensation in the amount and payable in the manner provided elsewhere in this article, *as if such disablement or death were an injury by accident,* except as otherwise provided in §§ 22 to 30 hereof . . . . [Emphasis added.]

Thus, in cases governed by § 22 (a), any increase in benefits which becomes effective after the date of last exposure to the occupational disease, but before the event of disablement resulting from that disease, would apply to the disability claim. Under the general rule which looks to the law in effect at the time of the injury, and because § 22 (a) equates occupational disease disablement with an injury by accident, application of the increased benefit to the later occurring disability is a prospective application.

The analogy is, of course, imperfect. Some special provisions are required which depart from a strict application of the analogy. The Act does not look for compensation to be paid by the one employing as of the date disability arises, but by the employer as of the date when the employee was "last injuriously exposed to the hazards of such disease . . . ." § 23 (b). The average wages of the employee as of the date of disablement are not used. Rather, "the amount of the compensation shall be based upon the average wages of the employee when last so exposed . . . ." § 23 (b).

Compensation in pulmonary dust disease cases was, at all times relevant to Shifflett's claim, specifically treated in § 24 (b). That statute was repealed effective July 1, 1980 (Ch. 706). In relevant part § 24 (b) provided:

> In the event of total disability or death from silicosis, asbestosis, or other pulmonary dust disease, compensation shall be payable to employees and their dependents in the same manner and in the amounts as required to be paid by employers to employees and their dependents, who are totally disabled or die from injuries arising out of and in the course of their employment as provided in § 36 of this article.

This section does not support Powhattan's position. It did not say that the amount of benefits was to be determined as of the date of last exposure to pulmonary dust disease. It said that "compensation shall be payable," in the amounts applicable in accidental injury cases, "[i]n the event of total disability" from pulmonary dust disease. Until there is dis-

ability, there is no claim. No compensable event has occurred, and limitations have not begun to run. *See Dickow v. Workmen's Compensation Appeals Board,* 34 Cal. App. 3d 762, 109 Cal. Rptr. 317 (1973).

That the ceiling on benefits in pulmonary dust disease cases is governed by the law in effect at the time of disablement is reinforced by the legislative history of former § 24 (b). When occupational disease provisions were added to the Act by Chapter 465 of the Acts of 1939, the ceiling on total disability benefits in silicosis and asbestosis cases was expressly addressed. Code (1939), Art. 101, § 37 established a scale under which the total benefits were increased monthly until the amount of benefits in such cases equalled the sums payable "had such total permanent disability and death been due to an accidental injury." In June 1939, the month in which the occupational disease provisions became effective, the total compensation was $500 "[i]f disablement occur[red]" in that month. Thereafter the benefits increased at the rate of $50 per month, with "the aggregate payable in each case to be limited according to the foregoing formula for the month in which total disability occurs . . . ." In other words, while the law in effect was changing month after month, the ceiling applicable to any given silicosis or asbestosis total disability claim was expressly determined by the law in effect at the time of disablement.

This phase-in provision was involved in *Consolidation Coal Co. v. Porter,* 192 Md. 494, 64 A.2d 715 (1949). The claimant in that case was a motorman who hauled coal from a mine; this involved the use of sand for braking and traction purposes inside the haulageways. The claimant's last injurious exposure to silica dust during his employment by Consolidation Coal was February 29, 1944. After leaving his job in the mine, he drove a truck for a bread company for a few months and then worked with an insurance company until November 1945. The Commission found that the beginning date of the permanent total disability was January 9, 1947.[3]

3. See Brief and Appendix for Appellant at 34, 37, Consolidation Coal Co. v. Porter, 192 Md. 494, 64 A.2d 715 (1949).

Compensation was awarded at the rate of $23 per week, not to exceed $5,050, to begin January 9, 1947. This represented $500 at the initial ceiling of June 1939, plus $50 per month for the 91 additional months to January 1947, the date of disablement. Contrary to Powhattan's position in this case, the February 1944 date of last injurious exposure was not utilized.

This gradually increasing maximum benefits provision for pulmonary dust disease cases was deleted by Chapter 290 of the Acts of 1951, which added (with only minor stylistic differences) the above-quoted language of § 24 (b). The effect of this amendment was to fix the maximum amount of benefits payable for total disability and death due to pulmonary dust disease by reference to the maximum benefits payable for accidental injury claims. There is no indication that, by the 1951 amendment, the General Assembly intended a departure from the use of the date of disablement to determine the applicable ceiling on benefits. To do so would have been inconsistent with the general command of § 22 (a) that disablement in such cases be treated "as if" it were an injury by accident. Had such a departure been intended, that intent would certainly have been expressed more definitely than by the language employed in § 24 (b).

The dollar amount of the maximum compensation award for permanent total disability from any cause is found in § 36 (1) of the Act. Section 24 (b) directed that the amount of compensation in pulmonary dust disease cases be as provided in § 36, and § 22 (a), by directing that occupational disease claims generally be compensable "in the amount . . . provided elsewhere" in the Act, also effectively refers to the benefit ceilings of § 36. This leads to Powhattan's principal argument, which is based on § 36 (11). That subsection reads:

> A provision in this section may not be construed to change the law pertaining to an *injury* or *disease occurring* prior to the effective date of any provision in this section for which a claim under this article is made. A provision in this section may not be

> construed to change the payment basis in effect at the time an *injury* or *disease occurs* for which a claim is made under this article. [Emphasis added.]

Powhattan argues that a "disease occurs" within the meaning of § 36 (11) on the date of the employee's last injurious exposure to the disease-causing agent. But "disease" as used in § 36 (11) means occupational disease. To read "disease" otherwise in § 36 (11) would be redundant, since a disease that "may naturally result" from an accidental injury arising out of and in the course of employment is included within the Act's definition of "injury." § 67 (6). Section 67 (13) defines "[o]ccupational disease" as used in Article 101 to mean "the event of an employee's becoming actually incapacitated, either temporarily, partially or totally, because of a disease contracted as the result of and in the course of employment, as provided in § 22 of this article." Consequently, with regard to occupational diseases, § 36 (11) by definition refers to the event of becoming incapacitated, or the event of disablement, "occurring prior to the effective date of any provision" in § 36 and § 36 (11) refers to a "payment basis in effect at the time" the claimant becomes incapacitated or disabled. The rule of construction in § 36 (11) does not look to the date of last injurious exposure.

We hold that the total amount of an award of compensation for permanent total disability from silicosis, asbestosis, or other pulmonary dust disease under Code (1957, 1979 Repl. Vol.), Art. 101, § 24 (b) is determined by reference to the ceiling provided in § 36 (1) (a) on the date when the claimant becomes permanently totally disabled.

In this claim, neither the Commission nor the medical board made any express finding of the date when Shifflett became permanently totally disabled. Powhattan does not contend that the Commission's award of benefits beginning as of 1959 means such disability was necessarily found as of that time.

Counsel for the claimant at oral argument in this Court advised that Shifflett died "of asbestosis" on November 9,

1980. This was after the judgment of the court below was entered on October 30, 1980. Absent a finding of the date of Shifflett's disability from which to account for payments made under the Commission's $20,000 award, we cannot say whether or not Shifflett would have been entitled to receive payments totaling more than $20,000 prior to his death. Consequently, it cannot be determined that the Commission's erroneous use of the statute in effect in 1959 was a harmless error.

For these reasons, the judgment of the Baltimore City Court which affirmed the Commission's award will be reversed, and the case will be remanded for further proceedings. In connection with the further proceedings, it should be observed that the Commission found Shifflett's average weekly wages from Powhattan to be $70. It then applied the 1959 limit on the weekly rate of compensation so that the award was $40 per week, not to exceed $20,000. We believe that, under the Act, the limit on the weekly rate of compensation in this case is also to be determined by the law in effect at the date of disability.

> *Judgment of the Baltimore City Court reversed, and case remanded to the Baltimore City Court for further proceedings consistent with this opinion.*
> *Costs to be paid by the employer and insurer.*