538 A.2d 782

**Wayne D. JAMES**

v.

**GENERAL MOTORS CORPORATION.**

No. 1070 Sept. Term, 1987.

Court of Special Appeals of Maryland.

March 8, 1988.

Certiorari Denied June 16, 1988.

480

Theodore Cornblatt (Smith, Somerville & Case and David Kimmelman, on the brief), Baltimore, for appellant.

Joseph B. Harlan (Joseph F. Zauner, III and Birrane, Harlan & Sharretts, on the brief), Baltimore, for appellee.

Argued before MOYLAN, ALPERT, and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Wayne D. James, appellant, filed with the Workmen's Compensation Commission a claim for benefits against General Motors Corporation, appellee. His claim, that he was temporarily totally disabled as a result of an occupational disease (bilateral carpal tunnel syndrome) arising out of and in the course of his employment with General Motors, was confirmed by the Commission, and appellee appealed.

The appeal was tried before a jury in the Circuit Court for Baltimore City. Appellant's motion for judgment made at the end of his case and, again, at the end of the entire case having been denied, one issue, whether appellant was "last injuriously exposed to the hazards of the occupational disease [bilateral carpal tunnel syndrome before September, 1985] while employed by the General Motors Corporation, Wilmington, Delaware," was submitted to the jury. The jury answered yes and, accordingly, the court entered judgment on the verdict in favor of appellee.

Appellant has appealed, presenting two questions:

1. Did the trial judge err in denying the claimant's motion for judgment and refusing to affirm the decision of the Maryland's Workmen's Compensation Commission,

in view of the fact that the claimant's last injurious exposure to the hazards of his occupational disease occurred at the employer's plant in Baltimore?

2. Did the trial judge err in denying the claimant's motion for judgment for failure of the employer to produce legally sufficient evidence to satisfy its burden of proving that the decision of the Maryland Workmen's Compensation Commission was incorrect?

Since our answer to the first question is in the affirmative, we will reverse; therefore, it is unnecessary that we reach question 2.

The parties have submitted an agreed Statement of Facts to facilitate our review. That statement is:

1. The claimant, Wayne D. James, was an employee of General Motors Corporation for 13 years.

2. The claimant was employed as an assembly line worker at the employer's Baltimore plant until June 1981 when he was laid off.

3. The claimant was rehired at the employer's Baltimore plant on September 9, 1985.

4. During the interim period between June, 1981 and August 1985, the claimant worked at the employer's plant in Wilmington, Delaware for approximately three years. During this employment, the claimant worked with a grinder, repetitively pressing with his hands.

5. The claimant continued working at the employer's Baltimore plant until April 23, 1986. During this period of employment from September 1985 to April 1986, the claimant used air tools and air guns which turned and jerked his hands and wrists repetitively.

6. The medical experts who testified (Dr. Andrew J. Weiland, the treating orthopedic surgeon, and Dr. Carmen Fratto, the employer's plant physician) agreed that the claimant has an occupational disease of his hands and wrists known as bilateral carpal tunnel syndrome. He began having symptoms of this condition in 1979.

7. On August 2, 1985, the claimant's expert Dr. Weiland found the claimant had symptoms of bilateral carpal tunnel syndrome.

8. On September 9, 1985, before commencing his return to actual employment in Baltimore, the claimant underwent diagnostic tests which confirmed Dr. Weiland's diagnosis of bilateral carpal tunnel syndrome. During the next several months, he underwent further examinations and tests which further confirmed this diagnosis. He began losing time from work when he was hospitalized for surgery on his left wrist on April 23, 1986. He is presently awaiting surgery on his right wrist.

9. Dr. Andrew J. Weiland, the claimant's expert witness, testified that in his opinion the claimant's condition is the result of his use of air tools and air guns at the employer's plant.

10. Dr. Carmen Fratto, the employer's expert witness, testified that the claimant's condition could have been caused by his use of air tools and air guns, but it could have also resulted from his use of a grinder at the employer's plant in Delaware.

11. Dr. Fratto further testified that it is not medically possible to determine whether a person with a history of football playing, lawnmowing, tennis playing, splitting firewood, snow sking, weightlifting, solder grinding, and the use of air power hand tools, who subsequent to all of these activities develops carpal tunnel syndrome, developed the carpal tunnel syndrome as a result of any particular one or more of these activities to the exclusion of some or all of the others. Evidence from company records introduced during the Employer's/Self–Insurer's case demonstrated that the claimant had engaged in all of these activities prior to employment at the Baltimore plant on September 9, 1985.

Maryland Rule 2–519 provides, in pertinent part: (a) *Generally.*—A party may move for judgment on any or all of the issues in any action at the close of all the evidence offered by an opposing party, and in a jury trial

at the close of the evidence. The moving party shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment shall be necessary. A party does not waive the right to make a motion by introducing evidence during the presentation of an opposing party's case.

(b) *Disposition.*—When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as a trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

This Rule makes clear that when ruling on a motion for a judgment the trial judge must consider the evidence, including the inferences reasonably and logically drawn therefrom, in the light most favorable to the party against whom the motion is made. *See Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 353, 517 A.2d 1122 (1986). If there is any evidence, no matter how slight, legally sufficient to generate a jury question, the motion must be denied. *Virgil v. "Kash N' Karry" Service Corp.*, 61 Md.App. 23, 28–29, 484 A.2d 652 (1984), *cert.denied*, 302 Md. 681, 490 A.2d 719 (1985); *McSlarrow v. Walker*, 56 Md.App. 151, 158, 467 A.2d 196 (1983), *cert. denied*, 299 Md. 137, 472 A.2d 1000 (1984); *Montgomery Ward & Co. v. McFarland*, 21 Md. App. 501, 513, 319 A.2d 824 (1974). On the other hand, where the evidence is not such as to generate a jury question, *i.e.*, permits but one conclusion, the question is one of law and the motion must be granted. *Schaeffer v. United Bank & Trust Co.*, 32 Md.App. 339, 343, 360 A.2d 461 (1976), *aff'd sub nom, United Bank & Trust Co. v. Schaeffer*, 280 Md. 10, 370 A.2d 1138 (1977). An appellate court reviewing the propriety of the grant or denial of a motion for judgment by a trial judge must conduct the same

analysis. *Pahanish*, 69 Md.App. at 354, 517 A.2d 1112. Before doing so in the instant case, however, we will review the legal framework in which the analysis is to be conducted.

Provisions of the Workmen's Compensation Act pertaining to occupational disease give context to the facts which we are called upon to analyze and may be helpful in our determination of the correctness of the trial judge's ruling on the motion for judgment. Maryland Code Ann. art. 101 § 23(b) embodies the test for determining the employer who is liable for paying compensation to an employee who suffers from an occupational disease. It provides:

*What employer and insurer liable; amount of compensation.*—When compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of the disease, and the insurance carrier, if any, on the risk when the employee was last so exposed under the employer, shall be liable therefor; the amount of the compensation shall be based upon the average wages of the employee when last so exposed under such employer; and the notice of injury and claim for compensation, as hereinafter required, shall be given and made to the employer.

Liability for compensation benefits has relevance only if the employee is entitled to receive compensation. Sections 67(13) and 22(a) address this issue. Section 67(13) defines an occupational disease to be "the event of an employee's becoming actually incapacitated, either temporarily, partially or totally, because of a disease contracted as the result of and in the course of employment, as provided in § 22 of this article". Under § 22(a), an employee entitled to compensation is one who, in addition to meeting the statutory requirements, "suffers from an occupational disease, and is thereby disabled [1] from performing his work in the last occupa-

---

1. *See* § 67(15) which states:
   "Disablement" as used in § 22 of this article means the event of an employee's becoming actually incapacitated, either partly or totally,

tion in which he was injuriously exposed to the hazards of such disease".[2]

■■■■ From the foregoing, it is clear that an employee suffers from an occupational disease when he or she is actually incapacitated and compensation is payable only when he or she suffers from an occupational disease. It is equally clear that there is a distinction between the date of last injurious exposure and the date of disability. *See Travelers Ins. Co. v. Proctor,* 59 Md.App. 149, 153, 474 A.2d 957 (1984), citing *Shifflett,* 293 Md. at 203, 442 A.2d 980. When the issue is who must pay compensation, it is the date of last injurious exposure to the hazard of the disease, and not the date of disability, that governs. *See Shifflett,* 293 Md. at 203, 442 A.2d 980; *Proctor,* 59 Md. App. at 152, 474 A.2d 957.

Both medical experts agree that appellant "has an occupational disease of his hands and wrists known as bilateral carpal tunnel syndrome". And the evidence is undisputed that the symptomology for this condition began as early as 1979. In fact, appellant's expert discovered the symptoms on August 2, 1985 and his diagnosis was confirmed on September 9, 1985, when appellant underwent diagnostic tests prior to returning to his employment with appellee. Nor can it be disputed that appellant's work at appellee's plant could have caused bilateral carpal syndrome: both appellant's and appellee's experts testified to that effect, although appellee's expert further testified that the condition could have resulted from his job responsibilities at his prior employment in the Delaware plant.

---

because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease; and "disability" means the state of being so incapacitated....
*See also Shifflett v. Powhattan Mining Co.,* 293 Md. 198, 201, 442 A.2d 980 (1982).

2. There is no dispute on this appeal that appellant meets the other statutory requirements.

Appellee notes that appellant's expert did not testify that appellant's condition was aggravated by the work he performed at appellee's Baltimore plant. Thus, it argues:

"[t]he jury was free to reject the doctor's causal relationship opinion ... because the activities described by the doctor as *the* cause took place after his diagnosis of bilateral carpal tunnel syndrome between August 2nd and September 9th of 1985.... The only *cause* which the doctor assigns for the *effect* is activities which unquestionably came after the existence of the effect had been medically and factually established." (emphasis in original)

Appellee's position, then, is that the date of last injurious exposure is a question of fact, the resolution of which is not necessarily related to the date of disablement. Indeed, appellee asserts that, for an exposure to be injurious, unless testimony tends to establish that the exposure aggravated the already existing disease, it must have occurred prior to the diagnosis of the disease. To reach this conclusion, appellee relies upon the definition of "injurious" as set out in Webster's New World Dictionary, Second College Edition, *i.e.,* "injuring or likely to cause injury; harmful". Appellee also attempts to distinguish *Proctor, supra* and *Shifflett, supra.*[3]

Appellee's argument is a variation of the argument made in *Proctor.* There, the claimant first noticed symptoms of Raynaud's disease, an occupational disease, in February, 1980, which prompted her to visit a doctor. In March, she was diagnosed as suffering from Raynaud's disease and advised not to return to work. Nevertheless, the claimant continued to work until April, 1980, when she could not do her job any longer. She filed for workmen's compensation

---

**3.** *Proctor* is distinguished on the basis that the Court did not address the question of the date of the claimant's last injurious exposure. *Shifflett* is distinguished on the basis that "the last injurious exposure happened to coincide with the last time the claimant was even exposed to a causative agent of his disease, and took place approximately 16 years before diagnosis of the disease."

benefits alleging disability due to an occupational disease. The question before the lower court was which of two insurance carriers was liable for the payment of the benefits to which the claimant was unquestionably entitled. Both carriers focused upon the date of disability as being dispositive of the question and the trial judge agreed. We disagreed. Significantly, we stated: "Viewing the facts in the light most favorable to the party opposing the motion for summary judgment, ... it would appear that the date of Proctor's last injurious exposure was her last day working for Giant—April 22, 1980." (Citation omitted) 59 Md.App. at 153, 474 A.2d 957. We remanded the case for further proceedings to determine if there was a genuine dispute of material fact as to the claimant's last injurious exposure.

■■■ Although the procedural posture of *Proctor* is different from that of the case *sub judice*, the facts are analogous. Therefore, we believe *Proctor* is dispositive of the issue here presented. *Proctor* rejected the argument that whether an exposure to the hazards of an occupational disease is injurious is dependent upon when the occupational disease is first diagnosed. Rather, it explicitly recognized and held that it was not. In so holding, we simply gave effect to the purpose of § 23(b) [4]: arbitrarily to assign liability to the last employment that could have caused the disease, so as to allow the claimant to satisfy his burden of proof as to actual causation. *See Lowery v. McCormick Asbestos Company*, 300 Md. 28, 39, 475 A.2d 1168 (1984). Since there is absolutely no dispute that appellant's work at appellee's Baltimore plant "could have been a contributory cause of the disease", it follows that there was nothing for

---

**4.** The language of the section is clear and unambiguous. Moreover, the result obtained from giving effect to the language of the statute is not absurd in light of the purpose of the statute. *See Miller v. Western Electric Co.*, 310 Md. 173, 187, 528 A.2d 486 (1987). *See also D & Y, Inc. v. Winston*, 74 Md.App. 157, 536 A.2d 1169 (1988). Consequently, we need not look any further for the intent of the legislature; in this case, statutory interpretation simply is not required. *See City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984).

the jury to decide.   Accordingly, we hold that the trial judge should have granted appellant's motion for judgment.

JUDGMENT REVERSED.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR ENTRY OF JUDGMENT IN FAVOR OF APPELLANT.   COSTS TO BE PAID BY APPELLEE.