MONTGOMERY COUNTY POLICE DEPARTMENT
ET AL. *v.* JESSE M. JENNINGS

[No. 988, September Term, 1980.]

*Decided July 8, 1981.*

---

The cause was argued before MORTON, MOORE and MACDANIEL, JJ.

*Richard W. Galiher, Jr.,* with whom were *Galiher, Clarke, Martell & Donnelly* on the brief, for appellants Montgomery County Police Department, employer and Insurance Company of North America, insurer No. Two. *Alfred J. Dirska,* with whom were *M. Evelyn Spurgin and O'Malley, Miles, Farrington & McCarthy* on the brief, for appellants Montgomery County Police Department, employer and Hartford Accident & Indemnity Company, insurer No. One.

*Phillip M. Sutley* for appellee.

MOORE, J., delivered the opinion of the Court.

This appeal involves a claim by a former Montgomery County police officer for workmen's compensation benefits because of an occupational disease, hypertension. The Medical Board for Occupational Diseases held that the disability began in 1964 and, therefore, that the claimant was not entitled to compensation under the presumption of compensability contained in Md. Ann. Code art. 101, § 64A.[1] The Circuit Court for Montgomery County, on

---

1. This section, originally made applicable to fire fighters by Chapter 695, Laws of 1971, was amended to include police officers, effective July 1,

appeal from an Order of the Workmen's Compensation Commission disallowing the claim, found that the disability began in 1973 and granted the claimant's motion for summary judgment.[2] The employer-insurer has appealed.[3] We affirm.

I

Jesse M. Jennings was a Montgomery County police officer for over 22 years, from September 1951 through late 1973. He had an exemplary record until he retired, on medical orders, because of heart disease.[4] His full-time employment as a police officer continued until June or July 1973, but he is now totally and permanently disabled.

Mr. Jennings, during his tenure as an officer, received special training in the handling of high stress situations and violent mental patients. He was six feet one and weighed 215 pounds. He testified that he had been involved in about 60 serious altercations with mental patients between 1957 and 1970. During the period from 1951 through 1970 altercations with non-mental patients numbered about 150.

In June 1964, while making an arrest involving an altercation, he experienced pressure in his chest, nausea, and shortness of breath and was taken to the Emergency Room at Suburban Hospital. Blood pressure tests and an

---

1972. Subsection (a) provides that any condition or impairment of health caused by heart disease or hypertension resulting in total or partial disability or death shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of this employment. Under subsection (b), the benefits provided are "in addition to such benefits as he may be entitled to under the retirement system" in which the officer was a participant at the time of his claim. Total benefits, however, may not exceed 100% of the weekly salary he received.

2. The court remanded the case to the Commission "to hear evidence solely on the issue of rebutting the presumption" that the claimant's disability was a result of his employment. The claimant filed a cross-appeal challenging the remand.

3. Also before us is an appeal by the Insurance Company of North America from the lower court's denial of its motion to strike it as a party.

4. Mr. Jennings was terminated on November 21, 1973. He received regular retirement at that time, without disability pay, based upon his years of service in the Police Department and 4 years of military service in the U. S. Marine Corps.

electrocardiogram were performed and he was hospitalized for two days. His electrocardiogram was normal on admission and remained normal throughout his admission. Upon discharge, his blood pressure had stabilized and was normal; he rested at home for five or six days and then returned to his regular duties. Beginning in 1967, he took medicine for blood pressure on a regular basis.

While on duty at his desk in 1970, Mr. Jennings experienced extreme pressure in the chest. He was taken immediately to his physician and an electrocardiogram was administered. A prescription was given for nitroglycerin and diuril. In September 1970, he was diagnosed as having "essential hypertension of moderate to severe degree still requiring treatment." In 1971, he was transferred to a desk job. Asked to describe the nature of his duties at that time, he testified:

> "I had to check and approve every report that the Police wrote in the Bethesda District. I had to approve or reject the idea to fingerprint and photograph every suspect that was brought in to the Station, make out a history sheet on them, I had to handle complaints they started with me. They came in, any type of complaint about anything, against Police Officers, whatever they might be."

In June or July 1973, his physician advised him to retire because of hypertension and angina. He actually ceased his work with the police department at that time but his retirement date was November 21, 1973. The following day, while at home, he suffered a myocardial infarction.

Jennings filed a claim for workmen's compensation benefits on November 4, 1974 pursuant to Md. Ann. Code art. 101, § 64A. On March 1, 1977, he appeared and testified at a hearing before the Medical Board. Medical evidence was introduced and received on his behalf. The employer-insurer offered no testimony. By decision dated May 25, 1977, the Board found that the claimant developed hypertension and hypertensive cardiovascular disease in 1964 "[which] nat-

urally progressed in severity subsequent to 1964." It concluded that his "disability" began in 1964 and that he was not entitled to compensation under Article 101, § 64A because the effective date of that statute was July 1, 1971. (Actually, the statute was not amended to include police officers until July 1, 1972.) The Board also concluded that the claimant did not sustain an occupational disease.

On October 9, 1978, the Workmen's Compensation Commission affirmed the decision of the Medical Board, and found that "claimant did not sustain ... an occupational disease arising out of and in the course of employment. . . ." Mr. Jennings appealed the Commission's decision to the circuit court. The case came on for a hearing on cross-motions for summary judgment. In a Memorandum and Order dated June 16, 1980, the court ruled that it would be "illogical and unfair" to hold that Mr. Jennings was disabled when he was performing his duties on a full-time basis, drawing a full salary. The court concluded that Mr. Jennings did not become disabled until 1973 when he was ordered to retire and, therefore, the disability *was* governed by Article 101, § 64A.

Claimant's motion for summary judgment was granted. The appellants' motion was denied but the case was remanded to the Commission "to hear evidence solely on the issue of rebutting the presumption that |claimant's| disability has been suffered as a result of his employment. . . ."

The employer-insurer presents the following questions on this appeal from Judge Mitchell's order:

"1. Did the trial court err when it reversed the Workmen's Compensation Commission when the decision of the Commission was supported by legally sufficient evidence?

2. Did the trial court err when it determined that Claimant's disability began in 1973, rather than 1971?

3. Did the trial court err when it remanded the case to the Workmen's Compensation Commission

to hear evidence on the issue of rebutting the presumption set forth in Section 64A?"

## II

The standard of review in occupational disease cases is set forth in Md. Ann. Code art. 101, § 56. That section provides, in relevant part, "in all appeals in which occupational diseases are involved, the findings of fact by the Commission shall be final and not subject to review or modification by the court or be submitted to a jury." However, in *Duncan v. McNitt Coal Co.,* 212 Md. 386, 395, 129 A.2d 523 (1957), the Court of Appeals observed, "[n]otwithstanding the finality which these statutes seek to confer upon such findings of the Commission, they are subject to review if not supported by substantial or legally sufficient evidence ... and the existence of such evidence is a question of law."

More importantly, the Court of Appeals has stated unequivocally that "a finding of the Commission [in an occupational disease case] may be reversed when it is based on an erroneous conception of the applicable law." *Maryland Bureau of Mines v. Powers,* 258 Md. 379, 383, 265 A.2d 860 (1970). Here, the Commission's affirmance of the Board's ruling — that Mr. Jennings' disability began in 1964 — was based on an erroneous legal construction of the term "disability" in occupational disease cases.

We begin our analysis by observing that until the enactment of an amendment in 1939, there was no legislative recognition of the right to compensation for an occupational disease. *Belschner v. Anchor Post Products, Inc.,* 227 Md. 89, 175 A.2d 419 (1961). The Court of Appeals has had occasion to define occupational disease as:

"some ailment, disorder, or illness which is the expectable result of working under conditions naturally inherent in the employment and inseparable therefrom, and is ordinarily slow and insidious in

its approach." *Foble v. Knefely,* 176 Md. 474, 486, 6 A.2d 48 (1939).

As used in Article 101, occupational disease means:

> "the event of an employee's becoming actually incapacitated, either temporarily, partially or totally, because of a disease contracted as the result of and in the course of employment." Art. 101, § 67 (13).

In providing compensation for an occupational disease, the General Assembly imposed two basic requirements: (a) that the claimant suffers from an occupational disease and (b) that the claimant is "thereby *disabled* from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, . . . and the disease was due to the nature of [his] occupation. . . ." Article 101, § 22. (Emphasis added.)

The "slow and insidious" nature of occupational disease necessarily betokens a lapse of time between the date of its contraction and the time when employment must cease. As Larson has expressed it in his treatise on *Workmen's Compensation Law*:

> "Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date."

The importance of the date of disability in such cases has been explained by the learned author in the following language:

> "In the search for an identifiable instant in time which can perform such necessary functions as to start claim periods running, establish claimant's right to benefits, determine which year's statute applies, and fix the employer and insurer liable for compensation, *the date of disability has been found the most satisfactory. Legally, it is the moment at which the right to benefits accrues* . . . it has the one cardinal merit of being definite, while such other

possible dates as that of the actual contraction of the disease are usually not susceptible to positive demonstration." (Emphasis added.) § 95.21 at 17-82.

In Maryland, the Code specifically defines disability in occupational disease cases. Article 101, § 67 (15) states:

"'Disablement,' as used in §§ 22, 27, 28 and 29 of this article [all dealing with occupational disease] means the event of an employee's becoming *actually incapacitated,* either partly or totally, because of an occupational disease . . . and 'disability' means the state of being so incapacitated." (Emphasis added.)

The meaning of the words "actually incapacitated" has been explained by the Court of Appeals in a case which has a significant bearing upon the instant appeal. *Belschner v. Anchor Post Products, Inc.,* 227 Md. 89, 175 A.2d (1961). There, the claim under Article 101, § 22 of a saw operator who suffered permanent loss of hearing because of the high noise level in his occupation, was disallowed. The evidence showed that the claimant continued his work, notwithstanding his "disease." Affirming the Commission's action, the Court of Appeals agreed that the saw operator was not disabled. With reference to the words, "actually incapacitated" in § 67 (15), the Court said:

"While the words 'actually incapacitated' are not defined in the statute, obviously because they are neither ambiguous nor equivocal and import no technical industrial meaning, it has been said that an employee is not incapacitated within the intent of the law 'if, though injured, [he] still has the capacity, the ability to, and does continue to perform his regular work, for which he was employed, and receives his usual pay for the work.' *Lumbermen's Reciprocal Ass'n v. Coody,* 278 S.W. 856 (Tex.Civ.App. (1926))."

*Id.* 227 Md. at 93, 175 A.2d 419. *Cf. Babcock & Wilcox, Inc. v. Steiner,* 258 Md. 468, 265 A.2d 871 (1970) (coal miner found to be "totally disabled" due to asbestosis despite his continuation of employment when parties stipulated to miner's total disability and medical evidence was uncontroverted; *Belschner* distinguished by the Court, n.2 at 472, because "although being an occupational disease case, [it] is not a pulmonary dust disease case coming under § 24(b)").

Here, it was found by the Board and the Commission that Mr. Jennings was disabled in 1964 and was, therefore, disqualified under § 64A because the latter did not become effective for police officers until July 1, 1972. Yet, it is uncontroverted that, after his 2-day hospitalization and 6-day convalescence at home in 1964, Mr. Jennings worked for nine years in his employment and the medical doctor who had treated him prior to the 1964 incident, and continuously thereafter, did not order him to stop working until June or July, 1973.[5] We think the trial court, on the authority of *Belschner,* properly rejected appellants' contention that approximately 8 days of illness in 1964 constituted "disablement" as of that time, rendering § 64A inapplicable. The conclusion of the Medical Board and the Commission miscontrued the law.

The alternative contention of appellants that Mr. Jennings' transfer to station house duties in 1971 constituted "disablement" at that time was not presented at the Board or Commission level and Judge Mitchell properly ruled that it could not be asserted for the first time on the appeal to the circuit court. *Cf. Bethlehem Steel Co. v. Carter,* 224 Md. 19, 165 A.2d 902 (1960). The issue need not be decided by this Court. Md. Rule 1085. At all events, we note that when the officer was reassigned to desk duty in Bethesda, his new job — previously described — was no sinecure. His new duties clearly appear to have been the stressful duties of a police officer, even though he was not patrolling in a squad car.

---

5. It was not until February 1973 that the doctor first recommended he retire because of his high blood pressure and heart disease. The claimant suggests that this was the "earliest conceivable indication of 'disability.'"

## III

We next address the correctness of the trial court's remand of the case to the Workmen's Compensation Commission "to hear evidence solely on the issue of rebutting the presumption that Mr. Jennings' disability has been suffered as a result of his employment."

In our view, the Medical Board, after taking claimant's testimony and considering medical evidence, had no occasion to apply the presumption of compensability contained in § 64A because of its finding that Jennings was disabled in 1964. Therefore, it was not necessary for it to determine whether the evidence was such as to rebut the (inapplicable) presumption that claimant's disability was suffered as a result of his employment as a police officer. Similarly, it was unnecessary for the Commission to make such a finding on the evidence then before it because it agreed that § 64A was, in the first instance, inapplicable. The issue of whether the presumption was rebutted was not there considered; it was, in effect, rendered moot by the Board and the Commission and may not be resolved by this Court on appeal. In *Trojan Boat Company, Inc. v. Bolton,* 11 Md. App. 665, 276 A.2d 413 (1971), we stated:

> "The practice, however, seems to have developed that in such cases, the proper procedure is to remand the proceedings to the Commission for original determination of the remaining issues which were thought to be moot in the earlier Commission proceedings."

*Id.* at 668-69, 276 A.2d at 413.

We hold that the trial court was correct in remanding the case to the Commission for an original determination concerning the issue of whether the presumption in § 64A was, or was not, overcome. However, we do not think it necessarily follows that the taking of additional evidence is required. The Commission may reach a conclusion based upon the record before it, should it deem the record adequate.

## IV

The third appellant, Insurance Company of North America ("INA"), filed a motion ne recipiatur in the circuit court because its name was not listed in the caption of the notice of appeal.[6] The motion was denied on February 22, 1980 and again denied on INA's motion for reconsideration. On appeal herein, INA claims the court erred in not granting its motion because of non-compliance with Maryland Rules B4, B5 and B2 (d).

In the appeal before the circuit court, INA was first named as a party on claimant's motion for summary judgment filed on December 27, 1979. We observe, however, and the parties agree, that INA was a party to the proceedings and participated actively before the Medical Board and the Commission.

Although the caption of the claimant's "Petition of Appeal" to the circuit court does not include INA as a party, we think it was sufficient for noting an appeal against it. Under Maryland Rule B2 (a) an order for appeal is "sufficient if the case is titled and captioned therein in the same manner as before the administrative agency from whose order the appeal is taken." Here, the case was titled and captioned in a manner *identical* to the Commission's order disallowing the claim. *See also Redden v. Montgomery County,* 265 Md. 567, 290 A.2d 494 (1972).

Furthermore, it is undisputed that counsel for INA was served with copies of the Petition of Appeal and the Appeal From Order of Workmen's Compensation Commission. Also it appears that the Commission notified INA, by letter dated November 22, 1978, that the claimant had entered an appeal. Thus, INA's contention that the Commission did not

---

**6.** Claimant's Petition of Appeal to the circuit court, filed November 6, 1978, indicated only the Montgomery County Police Department and Hartford Accident and Indemnity Company as the defendant-appellees.

give it notice of the filing of the appeal under Rule B2 (d) is without merit.[7] We find no error in the denial of its Motion.

*Order affirmed; appellants/cross-appellees to pay the costs.*

---

**7.** Rule B2 (d) provides:

"d. *Notice to Other Parties.*

Promptly after receipt of such copy [of the Order of Appeal] the agency shall, unless the court shall otherwise order, give written notice by mail or otherwise of the filing of the appeal to every party to the proceeding before it, or his representative. A certificate of compliance with this section shall be filed in the proceedings by the agency."

Rules B4 and B5 are not pertinent to this issue.