## MONTGOMERY COUNTY FIRE BOARD ET AL. V. DONALD M. FISHER

[No. 507, September Term, 1982.]

*Decided January 6, 1983.*

436

The cause was argued before MORTON, LISS and ADKINS, JJ.

*Richard W. Galiher, Jr.,* with whom were *Galiher, Clarke, Martell & Donnelly* on the brief, for appellants Montgomery County Fire Board and Insurance Company of North America.

*J. Kent Leonnig, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General of Maryland* and *John L. Ulrich, Jr., Assistant Attorney General,* on the brief, for appellant Subsequent Injury Fund.

*Steven A. Charles,* with whom were *Hardwick, Tripoda & Harris* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

These appeals arise from a decision by the Superior Court of Baltimore City affirming an order of the Workmen's Compensation Commission (hereinafter the "Commission"). The Commission had found the claimant to be permanently and totally disabled, 50% disability attributable to the employer

and insurer and 50% pre-existing disability chargeable against the Subsequent Injury Fund (hereinafter the "Fund"). The employer, the Montgomery County Fire Board (hereinafter the "employer" and its insurer, the Insurance Company of North America (hereinafter the "insurer") and the Fund as appellants challenge their 50% liability respectively to the appellee, Donald M. Fisher. The employer and insurer also appear as appellees/cross appellants in support of the declared liability of the Fund.

Donald M. Fisher, claimant, a fire fighter for Montgomery County, suffered a myocardial infarction on June 2, 1976 while at home.

He was hospitalized and returned to restricted duty work on September 16, 1976 for thirty days, then went on limited duty work. On October 27, 1976, after driving a fire truck and returning to the firehouse around 11:00 a.m., he ate lunch at noon, had chest pains and was hospitalized. He did not return to work on his doctor's advice and subsequently retired from his employment with Montgomery County on May 26, 1977.

Appellee filed two claims for occupational disease under Maryland Code (1957, 1979 Repl. Vol.) Art. 101, § 64A, one for the June 2, 1976 incident and one for the October 27, 1976 incident. The Fund was joined as a party for alleged pre-existing impairments. The Medical Board held a hearing on the two claims on October 25, 1977 (Dr. J. Howard Franz, presiding). Claimant testified in his own behalf and offered into evidence reports of Dr. Robert R. Montgomery, Dr. Harris M. Kenner and the deposition of Dr. William H. Killay in support of his claim. In contravention, reports of Dr. Sidney Scherlis were introduced on behalf of the employer and insurer and the Fund and the testimony of Dr. Scherlis was also received into evidence.

On August 9, 1978, the Medical Board issued its report and findings on the medical questions involved in the claim and concluded as follows:

> It is medically accepted that the underlying basis for most myocardial infarctions is arteriosclerotic

cardiovascular disease, a long term process which progresses slowly to the point where it becomes clinically manifested.

Testimony and medical reports agree on an episode of myocardial infarction on June 2, 1976, but no specific myocardial infarction on October 27, 1976. The claimant incurred the myocardial infarction on June 2, 1976 while starting a lawn mower at home. The second incident, on October 27, 1976, "was not precipitated by exertion but had followed his driving a fire truck by three to four hours" * * *

It is the opinion of the Medical Board that the disability of the claimant is attributable to arteriosclerotic cardiovascular disease, resulting in a myocardial infarction and subsequent episodes of angina. Multiple "risk factors" are recognized in the claimant.

Accordingly the Medical Board feels that the claimant's condition is neither caused by or aggravated by his occupation.

Following the decision by the Medical Board, claimant filed a petition for review and requested the Commission to review the record and proceedings before the Medical Board.

On September 19, 1980, the Commissioner of the Workmen's Compensation Commission issued an award of compensation which included the following findings of fact and of law:

The Commission finds: 1. on and before the event of June 2, 1976 the claimant developed a progressive disease of arteriosclerotic cardiovascular disease; 2. that on June 2, 1976 and [sic] event off-duty due to exertion precipitated the pre-existing disease and/or disability; 3. that on October 29, 1976 claimant within one hour after the operation of a fire truck had a myocardial infarction; 4. the presumption under Article 101 Section 64A is rebutted by the substantial and overwhelming evidence by Dr. Scherlis, Dr. Kenner and Dr. Montgomery as to the

incident of June 2, 1976; 5. the presumption under Article 101, Section 64A, though rebutted by Dr. Scherlis and Dr. Kenner and the testimony of Dr. Killay and Dr. Montgomery are sufficient legally to create compensability as to the incident of October 29, 1976; 6. that the pre-existing disability caused by the incident of June 2, 1976 was 50% industrial disability; 7. that the incident of October 29, 1976 precipitated the pre-existing arteriosclerotic cardiovascular disease and the disability of June 2, 1976 and the disability is 100%; 8. that the employer and insurer be assessed 50% disability and 9. that the Subsequent Injury Fund is assessed 50% disability; therefore, the Commission reverses the decision of the Medical Board and finds that the claimant did sustain an occupational disease arising out of and in the course of employment on June 2, 1976 and on October 29, 1976 and as a result thereof is permanently totally disabled, 50% of such disability is due to the occupational disease and 50% is due to pre-existing condition.

It should be noted that this case was decided upon the law in effect and its philosophy of Article 101, Section 64A. Without this presumption the Commission would not find compensability for the incident alleged herein.

A petition for rehearing was requested by the employer and insurer and an appeal petition was filed by the Fund on October 16, 1980. On October 20, 1980, a rehearing took place before the Commission and legal argument was heard. An affidavit was filed by the claimant stating that since the incident of October 29, 1976 he had not worked at any gainful employment and that he was placed on disability retirement on May 26, 1977. On November 5, 1980, the Commission issued an order granting the motion for rehearing. As a result of the rehearing, the Commission reaffirmed its order dated September 19, 1980 in all respects.

The employer and insurer filed an appeal to the Superior Court of Baltimore City and moved to consolidate its appeal with the appeal petition of the Fund dated October 16, 1980. Claimant moved for summary judgment and answers to the motion were filed by the Fund and by employer and insurer. The employer and insurer also filed a cross-motion for summary judgment and a memorandum in support of the cross-motion. On January 29, 1982, trial was held before the Superior Court of Baltimore City and oral arguments were made. The court affirmed the decision of the Commission on January 29, 1982. The Fund then filed a motion for reconsideration on February 4, 1982, and the employer and insurer filed a motion for reconsideration on February 9, 1982. Oral arguments were again presented before the court on February 23, 1982. By order dated March 2, 1982, the court affirmed the orders of the Commission, stating its reasons as follows:

> What he [the Commissioner] is saying is that this is an occupational disease. The legislature has put a cloak around occupational diseases, which he doesn't really agree with. However, because of that, together with other evidence, there is sufficient in the case to find this man totally disabled. The court will, therefore, again affirm the decision of the Commission.

From that order an appeal was filed to this Court by the Fund on March 24, 1982, and by the employer and insurer on April 5, 1982.

The three following issues are presented by these appeals:

> I. Whether the decision of the Workmen's Compensation Commission was supported by legal sufficient evidence?
>
> II. Whether the Workmen's Compensation Commission committed an error of law in its application of the statutory presumption created by Maryland Code (1957, Repl. Vol.) Article 101, § 64A?

III. Whether the Workmen's Compensation Commission committed an error of law in finding that the Subsequent Injury Fund was liable for a portion of the claimant's disability?

## I. and II.

We shall consider these issues together because they are inextricably joined by the enactment of the presumption created by Maryland Code, Article 101, § 64A. Section 64A (a) provides in part as follows:

(a) Any condition or impairment of health of any paid municipal, county, State, airport authority or fire control district, fire fighter or fire fighting instructor caused by lung diseases, heart diseases, or hypertension and any condition or impairment of health of any paid State, municipal, Maryland-National Capital Park and Planning Commission, county or airport authority police officer caused by heart diseases or hypertension resulting in total or partial disability or death shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment.

The Medical Board, which was established pursuant to Maryland Code (1957, 1979 Repl. Vol.) Article 101, § 27, consists of three members who "shall be licensed physicians in good professional standing" with specific expertise in the fields of industrial diseases and roentgenology. *See Big Savage Refractories Corp. v. Geary,* 209 Md. 362, 121 A.2d 212 (1956). The primary functions of the Medical Board are to conduct investigations, hearings, and file reports concerning occupational disease claims. These functions are essential to the process of establishing a right to compensation resulting from occupational diseases. *Duncan v. McNitt Coal Co.,* 212 Md. 386, 129 A.2d 523 (1957).

Article 101, § 28 requires the Commission to refer every claim for compensation for an occupational disease to the Medical Board. No award may be made in any such case until the Medical Board has completed its consideration of the case by filing a report in writing, stating its findings and conclusions on every medical question in controversy.

Any party aggrieved by the findings of the Board may file a petition for review with the Commission. The Commission may review and reverse the findings of the Medical Board even though the Board may have substantial evidence to support its findings. *Kelly-Springfield Tire Co. v. Roland,* 197 Md. 354, 79 A.2d 153 (1951); *Bethlehem-Sparrows Point Shipyard, Inc. v. Bishop,* 189 Md. 147, 55 A.2d 507 (1947); Maryland Code, Article 101, § 29.

In the instant case no hearing was held by the Commission prior to its award, which reversed the Medical Board's findings. Appellants concede that Article 101, § 29 does not expressly require the Commission to hold a hearing and review the proceedings, findings and report of the Medical Board; however, they contend that the language of the statute presumes that a hearing should be held because it sets the standard for review on appeal of the Commission's decision. The relevant language is stated as follows:

In any hearing, as provided for in §§ 22-30 of this article, held by the Workmen's Compensation Commission in any case to determine any controversial questions, no finding of fact by the Workmen's Compensation Commission shall be subject to be reviewed or set aside, reversed or modified.

We do not agree with the appellant's contention that the Commission was required to hold a hearing prior to or in conjunction with its review of the proceedings, findings and report of the Medical Board. We are even less persuaded by the argument that because the Commission held no hearing, the trial court, in direct contravention of the provisions of the statute, had the right to review the findings of fact of the Commission. The purpose of the establishment of the elab-

orate Medical Board proceedings was to provide a forum where complicated and technical medical issues derived from occupational disease claims could be properly investigated and hearings conducted, including the testimony of expert witnesses, and the record of proceedings submitted to the Commission for its *final* decision. To require a hearing in each case, upon review, would defeat the very purpose for creating the Medical Board. This is not intended to suggest that under the circumstances of a given case that the Commission could not require further testimony at its discretion. We see nothing in the statute, however, which requires an additional hearing in every case submitted to the Commission for its review.

Appellants next contend that there was insufficient evidence to support the finding of the Commission granting the award to the claimant. The joint record extract discloses that the appellee suffered a myocardial infarction for which he was treated in a hospital in a coronary care unit. He was returned to light duty several months later. Approximately a month thereafter, after returning from a fire call, he experienced the onset of severe chest pains. He was again admitted to coronary care under the supervision of his attending physician, Dr. Killay. In the hospital he also consulted with Dr. Robert R. Montgomery. Both the attending physician and the consultant agreed that the claimant should retire and not return to work as a fire fighter.

At the hearing before the Medical Board the deposition of Dr. William Killay was submitted. He stated in pertinent part:

Q Now I think I will ask you the opinion question again. Do you have an opinion, based upon reasonable medical certainty, as to whether Mr. Fisher's employment caused in whole or in part, the myocardial infarction of June 2nd, 1976?

A In my opinion, the emotional stress contributed in all probability to his underlying arteriosclerotic heart disease and thus to his myocardial infarction and his subsequent hospitalization for prolonged angina, yes.

Q Do you have an opinion, based upon reasonable medical certainty, as to whether his employment caused the symptoms of angina that you discovered on October 27, 1976?

A There seemed to be a clear temporal relationship —

Q Go ahead, please. He says it, it goes on the record, you can go on.

A There seemed to be a clear temporal relationship between driving the fire truck and the onset of the angina.

Q It's your opinion that his employment contributed to the arteriosclerotic disease itself. Why do you have that opinion or on what do you base your opinion?

A I think that we have all felt that emotional factors are operative in coronary artery disease, in the etiology of it. It's only recently that work has begun to be focused in that area, but anyone that has practiced for a long period of time has certainly felt that this factor is operative. We now see that people are becoming interested in this problem and are trying to quantitate it.

I think a fire fighter is in an occupation which is hazardous, risky and stressful.

Dr. Montgomery made a report which was also introduced into evidence. In the report he stated:

In regard to the question of whether the disability is service connected, I can only speculate. The pain of the myocardial infarction in June did not occur when he was on duty. However, the discomfort of his angina pectoris which prompted the admission to the hospital on which I saw him did occur on duty. This implies a service-connected relationship to that episode of angina pectoris but not to the acute myocardial infarction in June.

Dr. Sidney Scherlis appeared on behalf of the employer and insurer. He agreed that the claimant was suffering from arteriosclerotic cardiovascular disease and that the disease had caused the myocardial infarction which the claimant first suffered. He disagreed with Dr. Killay, however, and found that there was no causal relationship between the claimant's occupation as a fire fighter and the disease from which he was suffering. Dr. Harris M. Kenner, also on behalf of the employer and insurer, submitted a report in which he stated that he did ". . . not find anything in the history of his illness to suggest that his duties as a fire fighter caused or aggravated his illness."

Appellants complain bitterly that the Commission erred in its application of the statutory presumption. The nature of that presumption was before the Court of Appeals in *Colgan v. Board of County Commissioners for Prince George's County,* 21 Md. App. 331, 320 A.2d 82 (1974), *aff'd,* 274 Md. 193, 334 A.2d 89 (1975). In *Colgan,* the Court of Appeals stated:

> Finally, the parties hold contrary views as regards the nature of the presumption raised by the Act. The County says that it is a rebuttable presumption of fact; Colgan, that it is a rebuttable presumption of law. Following on the heels of Section 64 of Article 101, which provides that the presumptions set forth in that section are to be presumed "in the absence of substantial evidence to the contrary," it seems obvious that the use of the phrase "shall be presumed" in the Act, without contrary qualification, should be read in the same fashion. Consequently, the presumption, although rebuttable, is one of fact. [274 Md. at 193]. [Citations omitted].

There are two viewpoints from which the effect of a presumption may be considered. Judge Charles E. Moylan, Jr., speaking for this Court in *Plummer v. Waskey,* 34 Md. App. 470, 368 A.2d 478 (1977), pointed out that there is a difference between the effect to be given to a presumption in the

criminal law and the effect to be given to a presumption in the civil law.

Appellants urge us to adopt in this case the Thayer-Wigmore tradition which we held to be controlling in *Evans v. State,* 28 Md. App. 640, 349 A.2d 300 (1975), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976), applying the constitutional principles laid down by the Supreme Court in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Thayer-Wigmore tradition shifts to the party against whom the presumption operates *only* the burden of producing evidence and *not the ultimate burden of persuasion.* Under that type of presumption, only the burden of going forward is dissipated (the bubble bursts), whenever the evidence to the contrary is sufficient to generate a genuine jury issue. This is the only type of presumption which may operate in the criminal law because constitutionally the due process clause does not permit the ultimate burden of persuasion to be shifted to a criminal defendant on any issue.

The same restriction, however, does not apply in the civil arena. Unhindered by the limitations of criminal law due process requirements, a presumption, in the Morgan tradition, may shift the ultimate burden of persuasion, as well as the burden of producing evidence. Such a presumption does not disappear like the bursting bubble upon generation of a jury issue; rather, it remains in the case as one of the elements to be considered in determining whether the employer and insurer have met their burden of persuasion created by the Legislature in Article 101, § 64A.[1] It was the employer and insurer's burden of ultimate persuasion which required that the presumption remain in the case unless and until they persuaded the factfinder that the presumption was rebutted.

The Commission, in its fourth finding of fact and law, held that as to the June 2 incident, the presumption created by § 64A was rebutted by substantial and overwhelming evi-

---

1. *See* Plummer v. Waskey, *supra,* for a detailed discussion of both the Thayer-Wigmore and the Morgan traditions.

dence. In that finding the Commission made no further mention of any continuing weight accorded to the presumption. In contrast, as to the October 29 incident, the Commission considered the controverted medical testimony as to the pre-existing disability and its effect on the October 29 injury in light of the statutory presumption created by § 64A. The Commission's consideration of all these factors resulted in its conclusion that the claimant sustained an occupational disease in the course of employment on October 29, and that as a result of this and the pre-existing impairment evidenced by the incident of June 2, he was permanently totally disabled. The Commission apportioned 50% of the disability to the occupational disease and 50% to the pre-existing disability. Assuming that the June 2 incident was not compensable, there nevertheless was sufficient evidence to support the Commission's conclusion that the pre-existing disease together with the October 29 incident produced a 100% disability, with 50% of the disability due to the pre-existing disability.

As we reach this conclusion, we find no error in the Commission's ultimate determination that "but for" the presumption, it would not have found "compensability for the incident alleged herein."

### III.

Finally, the Fund raises an issue of first impression in Maryland. In *Montgomery County Police Department v. Jennings,* 49 Md. App. 246, 431 A.2d 721 (1981), this Court stated:

> The standard of review in occupational disease cases is set forth in Md. Ann. Code art. 101, § 56. That section provides, in relevant part, "in all appeals in which occupational diseases are involved, the findings of fact by the Commission shall be final and not subject to review or modification by the court or be submitted to a jury." However, in *Duncan v. McNitt Coal Co.,* 212 Md. 386, 395, 129 A.2d 523 (1957), the Court of Appeals

observed, "[n]otwithstanding the finality which these statutes seek to confer upon such findings of the Commission, they are subject to review if not supported by substantial or legally sufficient evidence . . . and the existence of such evidence is a question of law."

More importantly, the Court of Appeals has stated unequivocally that "a finding of the Commission [in an occupational disease case] may be reversed when it is based on an erroneous conception of the applicable law." *Maryland Bureau of Mines v. Powers,* 258 Md. 379, 383, 265 A.2d 860 (1970). [49 Md. App. at 251].

Article 101, § 64A provides that "any condition or impairment of health of any paid . . . fire fighter or fire fighter instructor caused . . . by heart diseases . . . resulting in total or partial disability or death shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment." From this language the Fund concludes that it was the intent of the Legislature to place the responsibility for disability arising from heart disease entirely on the claimant's employer. At the rehearing before the Commission and before this Court the Fund argued that none of the claimant's permanent disability should be attributable to the previous disability.

Article 101, § 66 (1) sets out the liability imposed on the Subsequent Injury Fund. It states in pertinent part as follows:

(1) *Permanent disability or death due to combined effects of impairment and subsequent injury; reimbursement for supplemental allowance payments made under § 36.* — Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in

permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable, and after the completion of payments therefor provided by this article, the employee shall be entitled to receive and shall be paid additional compensation from a special fund to be known as the "Subsequent Injury Fund," created for such purpose, in the manner described hereafter in this section, it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability.

In support of its position the Fund offers a similar statute in California and several cases decided in that State. The California statute states in pertinent part:

In the case of members . . . fire departments of . . . counties . . . excepting those whose principal duties are clerical . . . the term "injury" includes . . . heart trouble which develops or manifests during a period while such member is in the service of such office, staff, department or unit . . . . Such . . . heart trouble . . . so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find accordance with it. *Such . . . heart trouble . . . so developing or manifesting itself in such cases*

*shall in no case be attributed to any disease existing prior to such development or manifestation.* California Labor Code, § 3212.5 [Emphasis supplied].

The language in the final sentence of the provision was adopted in 1959 and has been construed by the California courts to preclude apportionment of part of claimant's disability for pre-existing disease. *See Turner v. Workmen's Compensation Appeals Board,* 258 Cal. App. 2d 442, 65 Cal. Rptr. 825 (1968).

We conclude that entirely apart from the differences between the language of the California statute and the Maryland presumption as created by Section 64A that the issue reached in *Turner, supra,* is different from the issue reached in this case. The issue reached in *Turner* was one of *causation* and turned on the question of whether the inservice heart trouble was industrially caused; whereas, in this case the issue raised by the Fund is that of *apportionment* of disability.

*Muznik v. Workmen's Compensation Appeals Board,* 51 Cal. App. 3d 622, 124 Cal. Rptr. 407 (1975), cited by the Fund, is also distinguishable from the case at bar. In *Muznik,* the issue was whether the petitioner's injury was "heart trouble" and if it was not then the presumption under Sec. 3212.5 of the California Labor Code did not apply. While there was, in dicta, some discussion of apportionment of disability, the holding relied on the statutory language of Sec. 3212.5 of the California Labor Code, which is clearly different from that of the Maryland statute.

We are required to read and consider all sections of the Workmen's Compensation law together in arriving at the true intent of the Legislature as it created the general system governing occupational injuries and disease. *Subsequent Injury Fund v. Chapman,* 11 Md. App. 369, 274 A.2d 870, *aff'd,* 262 Md. 367, 277 A.2d 444 (1971). If the Legislature intended to limit or narrow the responsibility of the Subsequent Injury Fund in claims arising out of the occupational diseases affecting firemen and policemen, it could

have very simply so stated in the provisions of Article 101, § 64A or § 66. It chose not to do so and we decline to write into the statute what the Legislature has chosen to ignore.

*Judgments affirmed.*
*Costs to be divided equally between appellants.*