656 A.2d 332

CES CARD ESTABLISHMENT SERVICES, INC. et al.

v.

Cynthia L. DOUB, et al.

No. 1026, Sept. Term, 1994.

Court of Special Appeals of Maryland.

April 3, 1995.

---

302

David O. Godwin (Andrew J. Spence and Montedonico, Hamilton & Altman, P.C., on the brief), Frederick, for appellants.

Theodore B. Cornblatt and Steven J. Meltzer (Smith, Somerville & Case, on the brief), Baltimore, for appellees Citicorp and Planet.

James W. Stone, on the brief, Hagerstown, for appellee, Doub.

Argued before BISHOP, ALPERT and SALMON, JJ.

SALMON, Judge.

Appellants, CES Card Establishment Services, Inc. (CES) and Atlantic Mutual Insurance Company (Atlantic Mutual), challenge a decision of the Circuit Court for Washington County granting summary judgment in favor of appellees, Cynthia L. Doub (Ms. Doub), Citicorp Credit Services, Inc. (Citicorp), and Planet Insurance Co. (Planet). On appeal, appellants present three issues, which we have rephrased and condensed to one:

> Whether, for purposes of assigning liability to a particular employer in an occupational disease case pursuant to § 9–502(b) of the Labor and Employment Article, the date of last injurious exposure may follow the date upon which the claimant became disabled from the disease.

We shall answer "no," for reasons hereinafter explained, and remand the case to the circuit court for further proceedings.

## BACKGROUND

On October 23, 1992, Cynthia L. Doub filed a claim with the Workers' Compensation Commission (WCC) alleging that she had developed an occupational disease, carpal tunnel syndrome, arising out of her work as an input/output clerk. The chronology of events leading up to the claim, as shown by

the record, is not disputed.[1]

At a hearing held before WCC Commissioner Richard Teitel on May 19, 1993, Ms. Doub testified that her job involved processing the incoming mail, which included "keying it on the system." She stated that she first began experiencing tingling and numbness in her hands in November of 1990. On November 19, 1990, Ms. Doub visited Dr. Guedenet, who diagnosed her with tenosynovitis[2] of the right hand and advised her to take three days off from work. Ms. Doub testified that, after taking the three days off, she returned to work, and worked thereafter for four months without problems. She went back to see Dr. Guedenet on June 7, 1991, however, after she again began experiencing pain in her right hand. At that time, Dr. Guedenet diagnosed tendinitis,[3] and Ms. Doub again took three days off from work.

Ms. Doub's condition again improved temporarily, but the pain eventually resurfaced, and she was diagnosed with right carpal tunnel syndrome on August 21, 1992. She underwent surgery on her right hand on January 25, 1993.

Ms. Doub was employed by Citicorp from January 1986 until July 1, 1992, and Planet was on the risk during that entire period. On July 1, 1992, as a result of a change in ownership, Ms. Doub became employed by CES, and Atlantic Mutual was on the risk from June 15, 1992 through June 15, 1993. Although Ms. Doub initially named appellants as the

---

1. Pursuant to Md.Rule 8–501(g), the parties have agreed upon a statement of facts. The purpose of the rule is to avoid the cost and expense of producing a record extract. Nothing in the rule, however, prevents us from considering facts in the record that were not mentioned in the agreed statement of facts. In this case there are certain facts concerning the events leading up to Ms. Doub's claim that, although omitted from the agreed statement of facts, will become important to our decision in this case.

2. This condition is defined as an "[i]nflammation of a tendon and its enveloping sheath." *Stedman's Medical Dictionary* 1417 (5th Lawyer's Ed.1982).

3. This condition is defined as "inflammation of a tendon." *Stedman's Medical Dictionary, supra,* at 1416.

employer and insurer liable to her for her claim, appellants impleaded appellees Citicorp and Planet.

At the WCC hearing, CES and Atlantic Mutual argued that the first date of disablement was November 19, 1990. Ms. Doub contended that the first date of disablement was September 15, 1992. In an Award and Compensation Order dated May 24, 1993, the WCC ruled as follows:

> The Commission finds on the issue presented that CES Card Establishment is the correct employer who is insured by Centennial Insurance Company[4]; and finds that the claimant sustained an occupational disease (right carpal tunnel syndrome) arising out of and in the course of employment, and the first date of the disablement was November 19, 1990 and that the date of last injurious exposure was January 25, 1993; and further finds that the disability of the claimant is the result of the occupational disease; and as a result thereof was temporarily totally disabled on September 15, 1992 and on December 15, 1992 and from January 25, 1993 to March 2, 1993 inclusive; less credit for sick leave paid; and finds that the employer and insurer shall pay medical expenses in accordance with the Medical Fee Guide of this Commission. The Commission further finds that notice was timely given. Average weekly wage—$351.69.
>
> It is, therefore ... ORDERED that the above named employer and above named insurer pay unto [Ms. Doub], compensation for temporary total disability at the rate of $235.00 payable weekly, on September 15, 1992, on December 15, 1992 and beginning January 25, 1993 and ending March 2, 1993 inclusive.... :

After their motion for reconsideration was denied by the WCC on June 16, 1993, CES and Atlantic Mutual filed a Petition for Appeal to the Circuit Court for Washington County, contending that "CES is not the employer liable for disability related to the occupational disease of November 19,

---

4. All parties agree that CES is insured by Atlantic. It is not explained in the briefs or the record why Centennial Insurance Co. was named by the WCC as the insurer of CES.

1990, and that, for the purpose of determining liability, claimant was not injuriously exposed last on January 25, 1993." Citicorp and Planet filed a motion for summary judgment. In their Memorandum of Law in support of the motion, Citicorp and Planet said:

> It is undisputed between all parties that the Claimant did have carpal tunnel syndrome and was in fact first disabled on November 19, 1990, while under the employment of Citicorp. However, as will be set forth, the first date of disablement has absolutely no relevance to the issue of which employer is responsible for a claim for an occupational disease. . . . Rather, the date that the claimant is last injuriously exposed to the hazards of the disease is controlling.

Ms. Doub joined in the motion for summary judgment filed by Citicorp and Planet.

At the hearing on the motion held January 7, 1994, Citicorp conceded, based on its position that the date of disablement had no relevance to determining which employer is liable for a WCC claim, that Ms. Doub was disabled as of November 19, 1990. Ms. Doub did not present an argument at the hearing.

## I.

Maryland Code (1991 Repl.Vol.), § 9–502(b) of the Labor and Employment Article (LE) provides that liability for an occupational disease is imposed on the employer and insurer "in whose employment the covered employee was last injuriously exposed to the hazards of the occupational disease." Both the WCC and the lower court imposed liability on CES and Atlantic Mutual, pursuant to the WCC's determination that the date of last injurious exposure occurred on January 25, 1993, when Ms. Doub was working for CES.

Appellants argue, however, that, when applying the rule of last injurious exposure, it is the last injurious exposure occurring *prior* to the date of disablement that is determinative. In support of this contention, appellants rely on subsection (d) of LE § 9–502:

(d) *Limitation on liability.*—An employer and insurer are liable to provide compensation under subsection (c) of this section only if:

(1) the occupational disease that caused the death or disability:

(i) is due to the nature of an employment in which hazards of the occupational disease exist *and the covered employee was employed before the date of disablement* . . . .

(Emphasis added). In accordance with the above wording, appellants assert that, inasmuch as the first date of disablement in this case was on November 19, 1990 and CES did not employ Ms. Doub until July 1, 1992, appellants cannot be liable for Doub's claim. Appellees argue, on the other hand, as they did before the circuit court, that, in determining which employer is liable for a claim, the date of last injurious exposure clearly governs, without any reference to the date of first disablement.

## II.

We begin our analysis by examining our decision in *James v. General Motors Corp.,* 74 Md.App. 479, 538 A.2d 782, *cert. denied,* 313 Md. 7, 542 A.2d 844 (1988). In *James,* we had occasion to apply the rule of last injurious exposure to a set of facts somewhat analogous to the ones in the case at hand. The claimant in *James* had been an employee of GM for 13 years. *Id.* at 482, 538 A.2d 782. Claimant worked for General Motors (GM) at its Baltimore plant until June 1981 and then worked at GM's Delaware plant from June 1981 until August 1985. *Id.* at 482, 538 A.2d 782. From September 1985 to April 1986, claimant worked for GM at its Baltimore plant. *Id.* Although claimant was diagnosed as having bilateral carpal tunnel syndrome before he returned to work at the Baltimore plant in September 1985, he did not become disabled from the disease until April 23, 1986, when he underwent surgery on his left wrist. *Id.* at 483, 538 A.2d 782.

A jury in the Circuit Court for Baltimore City determined that the last injurious exposure had occurred during claimant's employ at the Delaware plant. *Id.* at 481, 538 A.2d 782. Claimant appealed, contending that, inasmuch as the last injurious exposure clearly occurred at GM's Baltimore plant, the trial court erred in not granting his motion for judgment on the issue. *Id.*

In *James*, we began by generally recognizing that, under Maryland's occupational disease statute, compensation is only payable to a claimant from the date of disablement; disablement being the "event of an employee's becoming actually incapacitated, either partly or totally, because of an occupational disease, from performing his work in the last occupation in which [he was] exposed to the hazards of such disease...." *Id.* at 485 n. 1, 538 A.2d 782.[5] We then explicitly stated, however, that liability is not imposed on the employer employing the claimant on the date that the disability arises: "When the issue is who must pay compensation, it is the date of last injurious exposure to the hazard of the disease, and not the date of disability, that governs." *Id.* at 486, 538 A.2d 782 (citing *Shifflett v. Powhattan Mining Co.*, 293 Md. 198, 203, 442 A.2d 980 (1982), and *Travelers Ins. Co. v. Proctor*, 59 Md.App. 149, 153, 474 A.2d 957 (1984)). Although appellees in this case argue otherwise, this does not mean that the date of disability has no significance at all in determining the date of last injurious exposure.[6] Our application of the rule to the

---

**5.** Since we decided *James*, the relevant occupational disease provisions have been recodified in LE § 9–502 by Laws of Maryland, 1991, Ch. 8 § 2. We note that the definition of disability, quoted above, was previously located in Art. 101, § 67(15), and now appears without substantive change at LE § 9–502(a). The remainder of LE § 9–502 was derived from former Art. 101 § 22(a) and (b), § 23(c), and the first clause of § 23(b). *See* Revisor's Note appearing after LE § 9–502.

**6.** *Travelers Ins. Co. v. Proctor, supra*, decided prior to the *James* case, is not to the contrary. In *Proctor*, we emphasized the importance of distinguishing between the date of disability and the date of last injurious exposure in successive employer cases. *Id.*, 59 Md.App. at 152–153, 474 A.2d 957 (citing *Shifflett, supra*, 293 Md. at 203, 442 A.2d 980). In *Proctor*, however, neither party argued that the date of last

specific facts of *James,* a thorough review of prior cases applying the rule, and the plain meaning of the statutory language, all make that clear.

In *James,* we emphasized that the *date of diagnosis* is of no significance in determining which employer is liable under the rule of last injurious exposure. *Id.* 74 Md.App. at 488, 538 A.2d 782. Thus, in applying the rule to the facts before us in *James,* we held that, although claimant did not work at GM's Baltimore plant until after the date that he was diagnosed with carpal tunnel syndrome, the last exposure to the hazards of the disease, which occurred at the Baltimore plant (and was prior to the date on which claimant became "disabled" from the disease), could be considered "injurious" for the purposes of assigning liability to successive employers. *Id.*

In so holding, we rejected GM's argument that "the date of last injurious exposure is a question of fact, the resolution of which is not necessarily related to the date of disablement," *id.* at 487, 538 A.2d 782, and hence implicitly recognized that it is the date of disablement, and not the date of diagnosis, on which the administration of the rule depends. As we emphasized in *James,* compensation for an occupational disease claim is awarded from the date of disablement; for it is this date on which the claimant becomes incapacitated from the disease and thus actually suffers from it. *Id.* at 486, 538 A.2d 782. Therefore, although liability is clearly not imposed on the employer employing the claimant on the date of disability, it is that date from which one works backward to determine the date of last injurious exposure.

This reading of *James* is the only one that comports with the plain language of LE § 9–502. Subsection (b) mandates

injurious exposure, as the date that determines which employer is liable, must precede the date of disability. Rather, both parties, and the WCC Commissioner in the case, had focused on the date of disability itself as determining which employer and insurer would be held liable for the claim. *Id.* at 151, 152, 474 A.2d 957. Inasmuch as the statute and case law clearly mandated that the date of last injurious exposure governed the issue, we remanded for a factual determination of when claimant was last injuriously exposed. *Id.* at 153, 474 A.2d 957.

that liability to a claimant for an occupational disease only applies to

(1) the employer in whose employment the covered employee was last injuriously exposed to the hazards of the occupational disease; and

(2) the insurer liable for the risk when the covered employee, while employed by the employer, was last injuriously exposed to the hazards of the occupational disease.

If the above rule were applied with no reference to the date of disability, then LE § 9–502(d), which provides that an employer and insurer are not liable to a claimant unless the claimant's disease is due to the nature of an employment in which hazards of the occupational disease exist *"and the covered employee was employed before the date of disablement . . .,"* would make no sense.

Pre–*James* cases decided by the Court of Appeals support this construction. In *Lowery v. McCormick*, 300 Md. 28, 31, 475 A.2d 1168 (1984), the Court traced the history of the rule. The Court recognized that the rule had been followed in other states prior to its adoption in Maryland, noted how other states had applied the rule subsequent to Maryland's enactment of the Rule, and explored the purpose behind Maryland's original Occupational Disease Act, enacted by the legislature in 1939. *Id.* at 31–48, 475 A.2d 1168. In highlighting the advantages of the rule, the Court emphasized the significance of the date of disability:

> Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date. In the search for an identifiable instant in time which can perform such necessary functions as to start claim periods running, establish claimant's right to benefits, determine which year's statute applies, and fix the employer and insurer liable for compensation, the date of disability has been found the most satisfactory. Legally, it is the moment at which the right to benefits accrues; as to limitations, it is the moment at which in most instances the claimant ought to know he has a

compensable claim; and, to successive insurers, it has the one cardinal merit of being definite, while other possible dates as that of the actual contraction of the disease are usually not susceptible to positive demonstration.

*Id.* at 39–40, 475 A.2d 1168. (quoting 4 Larson, *Workmen's Compensation Law,* § 95.21 pages 17–82 to 17–86 (1981)); *Montgomery County Police Dept. v. Jennings,* 49 Md.App. 246, 252–53, 431 A.2d 721, *cert. denied,* 291 Md. 779 (1981) (quoting portion of same excerpt).

The *Lowery* Court emphasized that because of the latency period between being exposed to the hazards of the disease, and becoming disabled from it, the rule of last injurious exposure "eliminat[es] the often impossible burden of proving medical causation of the disease to a particular workplace." *Id.* 300 Md. at 48, 475 A.2d 1168. Although the Court recognized that assigning liability to the last employer that could have caused the disease may seem unfair under the facts of a specific case, it noted that the rule must be applied "uniformly and universally in order that the burden assigned to the last causal employer would—over the long haul—be equalized among all causal employers under the law of averages." *Id.* at 50–51, 475 A.2d 1168.

The Court made the following conclusions regarding the adoption of the last injurious exposure rule in Maryland:

It is plain that the Legislature was aware of the inherent difference between disability produced by accidental injury—with a fixed date of occurrence—and that produced by the more insidious occupational disease—the inception of which most frequently is clouded and the disabling effect of which may occur years after its commencement. The Legislature made a specific provision for that inherent difference: (1) by fixing the date of disablement as the accrual date of a worker's right to benefits (ch. 465, Acts of 1939, § 32B; now Article 101 § 22(a)) [recodified at LE § 9–502], and (2) by assigning liability for benefits to that employer in whose employment the disabled worker was last injuriously exposed to the hazards of the disease (ch. 465, Acts of 1939,

§ 32C, now Article 101 § 23(b)) [recodified at LE § 9–502(b) ].

*Id.* at 47–48, 475 A.2d 1168.

The facts involved in *Lowery* illustrate how the legislature intended the rule of last injurious exposure to work. George Lowery became disabled as the result of an asbestos related disease in June of 1980 and died as a result of the disease in 1982. *Id.* at 30, 475 A.2d 1168. Lowery had worked as an asbestos insulator for various employers in Maryland and other states from 1935 to 1975. *Id.* Inasmuch as it would have been extremely burdensome, if not impossible, to determine under which of Lowery's various jobs the disease was "caused," liability was imposed on the employer for whom Lowery was working when he was last exposed to the hazards of the disease in 1975.

*Shifflett v. Powhattan Mining Co.*, 293 Md. 198, 442 A.2d 980 (1982), presented a similar situation in that there was a lengthy latency period between claimant's last exposure to the hazards of the occupational disease and the onset of disability from the disease. The claimant in *Shifflett*, however, was only exposed to the hazards of the disease while working for one employer from 1950 to 1959, and thus liability was imposed on that employer.[7] *Id.* at 199. Although claimant was working as a security guard when he became incapacitated from the disease in 1975, liability was not imposed on that particular employer because, as the Court pointed out in the opinion, "[t]he Act does not look for compensation to be paid by the one employing as of the date the disability arises, but by the employer as of the date when the employee was 'last injuriously exposed to hazards of such disease.' " *Id.* at 203, 442 A.2d 980.

---

7. In *Shifflett*, during the latency period between when claimant was exposed to the disease and when he became disabled from it, the statutory cap for occupational disease disability awards had twice been raised. *Id.*, 293 Md. at 200, 442 A.2d 980. The Court of Appeals held that the cap in place at the time that claimant became disabled governed claimant's compensation award. *Id.* at 206, 442 A.2d 980.

The *James* case, unlike the circumstances involved in *Lowery* and *Shifflett*, presented a situation in which the claimant worked, in an occupation that exposed her to the hazards of the disease, after the date on which he was diagnosed with an occupational disease, but before disability ensued. This factual situation appeared to complicate what, in the latent disease cases, had been a mechanical application of the rule. Thus, in *James*, GM urged this Court to hold that in such circumstances, the date of last injurious exposure must be a factual question that is not necessarily related to when the claimant became disabled from the disease. As we emphasized, *supra*, however, we rejected this argument, thus implicitly reinforcing that the rule would continue to be applied as it had in the latent disease cases.

Therefore, in consideration of the case law discussed *supra*, read together with the plain statutory language contained in subsections (b) and (d) of LE § 9–502, we hold that, for purposes of assigning liability as among several employers, the last injurious exposure rule must be applied by finding the date that a claimant became disabled from an occupational disease and then working backward to determine the date of last injurious exposure. Put another way, we hold that in occupational disease cases the date of last injurious exposure can never come after the date of disability. In effect, we are defining "injurious exposure" as an exposure that contributed to the *onset* of disability—not one that may have exacerbated an existing disability.

### III.

Having determined the proper method of applying the last injurious exposure rule, we find it necessary to review the legal definition of disability. The term "disablement" is defined in LE § 9–502(a):

(a) *"Disablement"* defined.—In this section, "disablement" means the event of a covered employee becoming partially or totally incapacitated:

(1) because of an occupational disease; and

(2) from performing the work of the covered employee in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease.

In *Shifflett, supra,* 293 Md. at 202, 442 A.2d 980, the Court of Appeals emphasized that "the General Assembly considers disablement from an occupational disease as an event which is statutorily treated much like an injury caused by an accident." The Court acknowledged that the specific section governing compensation for occupational diseases, contained in former Art. 101, § 22(a), provided that upon becoming disabled, the covered employee would be compensated *"as if such disablement or death were an injury by accident...."*[8] *Id.* (emphasis in original).

As is clear from LE § 9–502(a), a claimant becomes "disabled" when he or she becomes "incapacitated," either partially or totally, "from performing the work ... in the last occupation in which the covered employee was injuriously exposed to the hazards of the occupational disease." *See Adams v. Western Electric Co.,* 63 Md.App. 587, 591, 493 A.2d 392, *cert. denied,* 304 Md. 301, 498 A.2d 1186 (1985) (recognizing "disablement" as equivalent to "incapacity").

In *Belschner v. Anchor Post Products, Inc.,* 227 Md. 89, 93, 175 A.2d 419 (1961), the Court of Appeals elaborated on the meaning of the phrase "actual incapacitation" as it appeared in former Art. 101, § 67(15):

While the words "actually incapacitated" are not defined in the statute, obviously because they are neither ambiguous nor equivocal and import no technical meaning, it has been said that an employee is not incapacitated within the intent of the law "if, though injured, [he] still has the capacity, the ability to, and does continue to perform his regular work,

---

**8.** Although the above language has been omitted from the recodified compensation provision, contained in LE § 9–502(c), it is apparent from an overall reading of LE § 9–502 that the onset of disability has remained the point at which the disease becomes compensable.

for which he is employed, and receives his usual pay for the work."

*Id.* at 93, 175 A.2d 419 (quoting *Lumbermen's Reciprocal Ass'n v. Coody,* 278 S.W. 856 (Tex.Civ.App.1926)); *Montgomery County Police Dept. v. Jennings, supra,* 49 Md.App. at 251, 431 A.2d 721 (quoting same excerpt). In interpreting its decision in *Belschner,* the Court of Appeals has emphasized that in determining whether a claimant is "incapacitated," a claimant's lack of wage loss, while always "relevant to show absence of actual incapacitation, . . . is not necessarily conclusive." *Miller v. Western Electric Co.,* 310 Md. 173, 191, 528 A.2d 486 (1987); *see also Victor v. Proctor & Gamble,* 318 Md. 624, 632, 569 A.2d 697 (1990). The *Miller* Court pointed out that "incapacitation" often encompasses many factors from which the fact finder determines (in the case of partial incapacitation) whether the claimant is "less capable of working" than he or she had been previously. *Id.* 310 Md. at 193, 528 A.2d 486.

Moreover, this Court has emphasized that the "incapacitation," whether partial or total, must be from performing the work in the last *occupation* in which the covered employee was injuriously exposed to the hazards of the occupational disease:

An incapacity to work in one set of conditions applicable to a particular job does not necessarily indicate or equate with an incapacity to perform the work in an occupation. Whether a disablement suffices to be occupational in scope would depend, at least in part, upon how the occupation is defined and how much of the range of activity fairly included within that occupation is in fact foreclosed to the claimant.

*Adams v. Western Electric Co., supra,* 63 Md.App. at 593, 493 A.2d 392.

## IV.

 Our final course of action under the facts of the instant case is complicated by the odd procedural posture presented. All parties have proceeded at the circuit court level, and here

at the appellate level, on the assumption that Ms. Doub was "disabled" and thus necessarily "incapacitated" on November 19, 1990. Citicorp and Planet conceded this fact at the summary judgment hearing, based on the erroneous legal theory that the date of disablement has no relevance in the application of the "last injurious exposure" rule. Although Ms. Doub maintained at the WCC hearing, and on her claim form, that she was first disabled on September 15, 1992, she joined the motion of appellees Citicorp and Planet, and did not present a separate argument at the hearing on summary judgment.[9] The Agreed Statement of Facts reveals that all parties acknowledged that, "[b]ased on the evidence presented, the Commission determined that the Claimant sustained an occupational disease (right carpal tunnel syndrome) arising out of and in the course of employment and that the first date of disablement was November 19, 1990 . . . ." In their brief, appellees point out, however, that Ms. Doub was also disabled on September 15, 1992, December 15, 1992, and from January 25, 1993 to March 3, 1993.

In consideration of the above sequence of events, it is clear that Ms. Doub never explicitly conceded to November 19, 1990 as the date of disablement. Therefore, it would be inappropriate to hold her to such a concession.

---

**9.** Ms. Doub's reason for not challenging November 19, 1990 as the date of first disablement lies in the text of the WCC's Award and Order. Although the WCC found that Ms. Doub's disability had begun as of November 19, 1990, the WCC did not use this date to calculate the amount of compensation due her, nor did it order compensation to begin as of this date. Thus, it seems that inasmuch as Ms. Doub received compensation based on her average weekly wage as of January 25, 1993, rather than in November of 1990, and received compensation for all of the dates requested on her claim form, there was no incentive on her part to challenge the WCC's finding as incorrect. To hold her now to November 19, 1990 as the date of disablement would mean, in light of our holding in this case, that the earliest date of last injurious exposure would be on November 19th, and her average weekly wage and benefits would have to be recalculated accordingly. See LE 9–602(a) (stating that "[e]xcept as otherwise provided in this section, the average weekly wage of a covered employee shall be computed by determining the average of the weekly wages of the covered employee . . . at the time of . . . the last injurious exposure of the covered employee to the hazards of an occupational disease").

■ At least based on the facts presented in the record, Ms. Doub was not "disabled," within the meaning of the term provided in LE § 9–502(a), on November 19, 1990. At the hearing before Commissioner Teitel, Ms. Doub testified that she first began experiencing pain in her right hand in November of 1990. She went to the doctor and thereafter missed three days of work beginning on November 19, 1990. Although we acknowledge that Dr. Guedenet advised Ms. Doub to wear a wrist support on her right hand, there is nothing in the record tending to show that the amount of work assigned · to appellant was diminished after she returned to work, that she was producing less work because of the problems, that her employer was not satisfied with her work product, or that she was impaired from using her right hand. In fact, Ms. Doub testified that after her three-day absence in November of 1990, her condition "improved" for a period of four months. Furthermore, when asked by counsel for appellants whether the doctor told her in November of 1990 to "lay off typing for awhile," Ms. Doub responded that "[t]he only thing he did at that time was take me off work for awhile." In short, the record does not support the finding that Ms. Doub was any less capable of performing her work as an input/output clerk after she returned to work following her three-day absence than she had been before she took the three days off. Moreover, our review of the entire record does not indicate that Ms. Doub was disabled at any time before she went to work for appellant.

■ It is well established that an appellate court "will not ordinarily undertake to sustain the judgment by ruling on another ground, not ruled on by the trial court, if the alternative ground is one as to which the trial court had the discretion to deny summary judgment." *Three Garden Village Ltd. Partnership v. U.S. Fid. & Guaranty Co.*, 318 Md. 98, 107–108, 567 A.2d 85 (1989) (quoting *Geisz v. Greater Baltimore Medical Center*, 313 Md. 301, 314 n. 5, 545 A.2d 658 (1988)).

It appears from our review of the record that the trial court could have granted summary judgment in favor of appellees

by applying the last injurious exposure rule in the method outlined above. He appropriately could have concluded: 1) Ms. Doub did not become "disabled" from performing her duties in the last occupation that exposed her to the hazards of the disease until she became employed by CES; 2) counting backward from the date of disability, Ms. Doub was last injuriously exposed while she worked for CES; 3) therefore, appellants are responsible for paying Ms. Doub workers' compensation benefits. As already noted, this argument was not made in support of appellee's motion for summary judgment. If the argument had been advanced, it would not necessarily have succeeded due to the discretion vested in the trial court. *Id.*

For the above reasons, we find it necessary to reverse and remand this case to the circuit court for further proceedings.[10]

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANTS AND APPELLEES CITICORP CREDIT SERVICES AND PLANET INSURANCE CO.**

---

10. On remand, appellees may, if they wish, again move for summary judgment based on the facts already established or any party may do so based on such additional facts as are presented pursuant to Md.Rule 2–501.